EDWARD K. STRETCH, FREDERICK W. COLLINS, ANDREW VICTORY AND J. WHITMORE BARNEY, RELATORS, v. STATE BOARD OF MEDICAL EXAMINERS.

Argued September 29, 1915—Decided October 6, 1915.

1. Section 1 of chapter 317 of the laws of 1915 (*Pamph. L., p.* 564) provides that "Any person who is a graduate of a regularly incorporated school or college of osteopathy, requiring personal attendance, and actively engaged in the practice of osteopathy in this state and a resident thereof for a period of one year immediately prior to the second day of April, 1913, shall upon proof of said facts, by affidavit, together with his diploma from said institution, filed with the State Board of Medical Examiners, be entitled and granted forthwith a license to practice the profession of osteopathy in this state, upon payment of the fee now required by law to be paid by applicant to practice the profession of osteopathy in this state; *provided,* such application be made within three months after the passage of this act." *Held,* that it is mandatory upon the State Board of Medical Examiners to issue such license, but only when there is an actual existence of the facts precedent to the issuing of the same and neither upon a representation of these facts in certain documents

nor upon the opinion or judgment of the board as to what those facts are. It is the duty of the board to satisfy itself of the truth of the facts set forth and if its conclusion be adverse to the applicant, the applicant is not thereby concluded, but is entitled to have the facts ascertained judicially and if settled in his favor it is mandatory on the board to issue the license, notwithstanding its former adverse decision.

2. It is doubtful whether it is proper in *mandamus* proceedings to embrace four relators in one rule or in one writ, when their rights are separate and distinct upon different states of facts, similar only in their nature.

3. The provisions of the Practice act of 1912 do not apply to *mandamus* proceedings.

On rule to show cause why said state board should not be required by *mandamus* to issue licenses to relators to practice osteopathy in the State of New Jersey.

Before Justices PARKER, MINTURN and KALISCH.

For the relators, *James M. Davis.*

For the respondent, *Josiah Stryker (John W. Wescott,* attorney-general, on the brief).

The opinion of the court was delivered by

PARKER, J.    Relators claim their licenses by reason of having complied, as they maintain, with the provisions of chapter 317 of the laws of 1915 (*Pamph. L., p.* 564), whose first section provides as follows:

"1. Any person who is a graduate of a regularly incorporated school or college of osteopathy, requiring personal attendance, and actively engaged in the practice of osteopathy in this state, and a resident thereof for a period of one year immediately prior to the second day of April, 1913, shall upon proof of said facts, by affidavit, together with his diploma from said institution, filed with the state board of medical examiners, be entitled and granted forthwith a license to practice the profession of osteopathy in this state, upon payment of the fee now required by law to be paid by applicant to practice the profession of osteopathy in this state;

provided, such application be made within three months after the passage of this act."

It is conceded that relators submitted in due course affidavits stating the required particulars, and that each submitted also a paper purporting to be a diploma from the "New Jersey College of Osteopathy," which is claimed to be an institution complying with the above statute.

Some testimony has been taken under this rule, upon the question whether said corporation is in fact "a regularly incorporated school or college of osteopathy requiring personal attendance." It seems to be admitted by respondent that it is regularly incorporated, but it is denied that such corporation requires personal attendance; we do not find any testimony directed specifically to the question whether relators are "graduates" in the real sense of the word as distinguished from mere holders of diplomas or certificates, or that they were "actively engaged in the practice of osteopathy in this state and a resident thereof" for one year immediately prior to April 2d, 1913, although with respect to relator Collins there is some evidence on all these points. Relators do not rely on such proof; on the contrary, their claim is that the affidavit and diploma are conclusive, and that whatever be the actual facts, the state board is required to license an applicant on receipt of these papers in proper form. On the other side, it is contended that the qualification of the candidate is a question of fact, of which the papers are no more than *prima facie* evidence; that the board is judge of the facts, and its decision thereon final; and that in fact the college named is not an institution requiring personal attendance. The board does not seem to have taken definite action either to grant or refuse the licenses, but, it having failed to act for some four months, and now resisting this application, we should assume that it refuses to grant them.

We agree with the relators that the act is mandatory on the board; but, in our opinion, its mandate depends upon the actual existence of a state of facts, and neither upon a representation of those facts in certain documents nor upon the opinion or judgment of the board as to what those facts are.

Acts of this character are usually phrased in such a way as to require proof "to the satisfaction of said board," or the like; and in such cases the board is the statutory judge of the facts. The act under consideration is different from these, and different also from the class of statutes which prescribe that any-one who shall make an affidavit of certain facts shall be enti-tled to certain relief. Its intent is plain. By its express lan-guage it is limited to any person who *is* a graduate of a speci-fied institution, and who *is* actively engaged in the practice of osteopathy in this state and who *is* a resident, &c. *Such* person shall upon proof of said *facts* by affidavit, &c., be enti-tled to a license.

This is very far from saying that any person who makes affidavit that he is a graduate, engaged in practice, and resi-dent as above, and files such affidavit and a diploma with the board, shall have a license. So, the right to a license depends fundamentally upon the facts, and ultimately upon the facts being set forth in the specified manner. It is hardly con-ceivable that the legislature intended to license as practition-ers of a healing profession any and all who should lodge cer-tain papers with the state board, irrespective of the truth or falsity of those papers.

But, as already intimated, we cannot agree with counsel of respondent that they are the judges of the facts. We concede this to be generally true in cases of this kind; but we think it will be found that they turn on the language of some statute which expressly or by plain implication desig-nated the board as judges of the facts. The act in question is not of that class. The board, upon receipt of papers in proper form, is, as we think, required to pass, in the first instance, upon the facts therein claimed. It may be satisfied of their truth, in which case its duty is to license. It may not be so satisfied, in which case its duty is to make reason-ably prompt investigation and satisfy itself one way or the other. If its conclusion be adverse to the applicant, such ap-plicant is not himself concluded thereby, but is entitled to have the facts ascertained judicially, and, if settled in his favor, to have his license, notwithstanding the prior adverse

conclusion of the board. Such judicial ascertainment would, of course, be in a *mandamus* proceeding.

It remains to apply these views to the present case. The facts in question were made to appear in the moving affidavits on which this rule to show cause is based. These affidavits lost their force when the rule was allowed, and relators were then put to the requirement of taking depositions. *Peer* v. *Bloxham,* 82 *N. J. L.* 288, and cases cited. As already stated, they have not gone fully into the actual facts, evidently relying on their construction of the statute. On the other hand, respondents have covered the ground quite fully, and on the evidence as now before us we should be constrained to hold that no case for a writ is made out, as the legal right must be clear.

At the same time, it is important that the facts should be ascertained and the whole matter disposed of, both as to these four relators and also as to over one hundred others who are not parties herein. Several methods suggest themselves, dependent partly on consent of parties.

1. It appears that when the rule to show cause was made, the board was holding a series of hearings on the facts, which were stopped until the determination of the rule. These, if the parties so agree, could be continued, to the end that the board reach a conclusion, which peradventure will favor the applicants; this proceeding remaining meanwhile in *statu quo.*

2. The present rule may be continued by consent, with leave to take further depositions and submit them to this court to ascertain the facts and either allow a peremptory writ or refuse any writ, according to its finding on the facts.

3. Respondents may consent to an alternative writ at once which will result in an issue of fact to be submitted to the court on depositions by consent or triable by a jury on proper pleadings. *Tapp. Mand.* *389; see *Jones Company* v. *Guttenberg,* 66 *N. J. L.* 659, 665.

4. Failing any agreement as above, we incline to discharge the rule, but without prejudice to an application for a new

rule or rules under which the facts may be fully inquired into, and ascertained by the court or by a jury, as circumstances may require.

It is proper to say that we doubt the propriety of embracing these four relators in one rule or in one writ. Their rights are separate and distinct and depend upon different states of facts similar only in their nature. The Practice act of 1912 does not apply to *mandamus* proceedings; and if it did apply, section 4, the only pertinent provision, does not cover the case.

Failing the adoption by the parties of any of the alternative courses suggested, the rule to show cause will be discharged, subject to the proviso in paragraph numbered 4 above.