People of State of Illinois ex rel. Leopold Schutz, Appellee, v. Frank G. Thompson, Director of Department of Registration and Education of State of Illinois et al., Appellants.

Gen. No. 43,102.

Heard in the second division

of this court for the first district at the June term, 1944. Opinion filed February 13, 1945. Released for publication March 5, 1945.

GEORGE F. BARRETT, Attorney General, for appellants; WILLIAM C. WINES, Assistant Attorney General, of counsel.

MAURICE L. DAVIS, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Relator brought an action in mandamus to compel Frank G. Thompson as director, and Philip M. Harman, as superintendent, of the Department of Registration and Education of Illinois, to grant him access to the examination of candidates for licenses to practice medicine in all its branches. The cause was heard upon the complaint, respondents' answer, relator's reply, and evidence adduced upon the hearing. The judgment awarding the writ of mandamus from which respondents appeal, found that the cause was duly and regularly heard by the court upon the pleadings and evidence offered by the respective parties; that the court was fully advised in the premises; that the allegations contained in the pleadings of the relator are true; that he possesses the requisite professional education and training to permit him to take an examination, as provided in the Medical Practice Act of the State of Illinois, for the purpose of procuring a license to practice medicine in all its branches in this State, and that the relief sought ought to be allowed.

From the essential allegations of the complaint it appears that relator, who was born in Germany in 1886, attended public school in that country from 1892 to 1897 and high school from 1897 to 1906, successfully completing all the prescribed courses which embraced the studies usually given in grammar schools, high schools and liberal arts colleges in the State of Illi-

nois; that he pursued his medical studies at various universities in Germany at the respective times following: University of Breslau, April 1, 1906 to July 15, 1906; University of Marburg, October 1, 1906 to March 31, 1907; University of Munich, April 15, 1907 to July 15, 1907; University of Breslau, October 1, 1907 to March 31, 1908; University of Munich, April 15, 1908 to July 15, 1908; University of Berlin, April 1, 1909 to August 1, 1909; and University of Munich, October 1, 1909 to January 15, 1912; that in and through these studies he completed all the courses required for graduation and on January 12, 1912 satisfactorily passed the governmental examination for physician given in Munich, Germany and was accordingly on March 19, 1913 licensed as a physician in Germany, a true copy of the license issued to him being attached to the complaint as an exhibit; that on May 1, 1917 the University of Breslau awarded to him the degree of doctor of medicine, a copy of his diploma being also attached as an exhibit; that at and before the time he qualified for the degree of doctor of medicine the University of Breslau was a reputable medical college in good standing, within the meaning of the Medical Practice Act (Ill. Rev. Stat. 1943, ch. 91 [Jones Ill. Stats. Ann. 79.01 *et seq.*]) of the State of Illinois; that the university which awarded him the degree at that time required substantially the same prerequisites for graduation as those required by the Medical Practice Act of Illinois, and that all the universities attended by him were reputable medical colleges in good standing, within the meaning of the Act; that he practiced medicine as a physician in Germany for more than 20 years, but on October 1, 1938 he was deprived of his license because he was a non-Aryan; that he had committed no offense against the laws of Germany, and the revocation of his license was not a punishment for any crime but was wholly because of discrimination by the German Reich against so-called

"non-Aryans"; that when he left Germany in February 1939 the transcripts of his credits were confiscated by the Gestapo, and it is impossible for him to secure copies thereof because Germany is an enemy country, and in any event would not permit the furnishing of any such copy of records for a non-Aryan; and that he is able and ready to make proof upon hearing, of his having successfully completed medical and premedical studies sufficient to warrant his admission to said examination of his qualifications for the practice of medicine in all its branches in the State of Illinois, but that "the Department of Registration and Education has improperly, arbitrarily and unreasonably refused to consider any proofs other than transcripts of [his] medical and premedical studies."

Respondents concede that as part of his credentials relator submitted satisfactory evidence within the provisions of section 4 of the Medical Practice Act, that he was a person over the age of 21 years, of good moral character, and that he had made a declaration of intention to become a citizen of the United States; but they aver in their answer that "it has been a rule of the Department of long standing requiring applicants for medical licenses to submit complete transcripts of medical and premedical records with applications," and when he applied for admission to the medical examination, submitting a true copy of the license issued to him as a physician in Munich, Germany, and also a copy of his diploma awarding him the degree of doctor of medicine from the University of Breslau, he was advised by the superintendent of registration that it would be necessary for him to also forward for verification by the department his "original study books, a record of your premedical studies, and your Absolutorium Certificate. These records must be accompanied by legalized translations." Since he was unable to furnish these records for the reasons alleged in the complaint, his application was

denied. In the absence of a report of proceedings, and giving effect to the finding in the order awarding the writ of mandamus, we must assume that the evidence adduced upon trial was sufficient to establish his qualifications for admission to the examination (*Addante v. Pompilio,* 303 Ill. App. 172), and the only question presented is whether, in the light of the circumstances alleged in the complaint, the rule or regulation of the department, requiring applicants to submit transcripts of medical and premedical records, is reasonable in its general terms and intent, and if not, whether mandamus will lie to compel respondents to consider other competent evidence of relator's qualifications to be admitted to the examination.

Section 16d of the Medical Practice Act provides that the department shall have power and it shall be its duty "1, To make rules for establishing reasonable minimum standards of educational requirements to be observed by medical colleges, or by any professional school, college, or institution teaching any system or method of treating human ailments, . . . and to determine the reputability and good standing of all schools, colleges, and institutions now, heretofore, or hereafter existing; 2, to require satisfactory proof whether any medical college, or professional school, college or institution teaching any system or method of treating human ailments, . . . enforced at any particular time in the past the standard of preliminary education requisite to admission thereto; and 3, to determine the standard of literary or scientific colleges, high schools, . . . graded schools, and the like, in the discharge of its duties."

The rule is well established in this state that courts may review the regulations of the department to determine whether they are fair, reasonable and impartial. In *Kettles v. People,* 221 Ill. 221, the court held that the statute conferred on the board of examiners the right to make such reasonable rules and regu-

lations as in their judgment and discretion were deemed necessary, and a like discretion to determine what was a reputable college or school by reference to the standard of educational requirements adopted by the board; but that no arbitrary powers were granted and the enactment required rules to be reasonable, and whether the rules and regulations of the board were uniform and reasonable and in accordance with the law was a question the courts would decide when presented to them. In *People v. Kane,* 288 Ill. 235, the court again referred to the provisions of the Act that all examinations should be conducted under rules and regulations prescribed by the board and held that such rules and regulations, if made, would be subject to review by the courts to determine whether they were reasonable or not (citing *Kettles v. People*). In *People v. Love,* 298 Ill. 304, a regulation of the department to the effect that relator and his class of physicians were required to accompany their application by letters of recommendation as to their moral and professional character from at least two reputable medical men or osteopathic physicians, was held to be arbitrary and unreasonable because "the prejudice existing against chiropractors by medical men and osteopaths is known to be intense and in many cases very unreasonable. For a chiropractor to have to conform to such a regulation would in all probability result in his being excluded from any examination whatever by reason of his inability to obtain such a certificate, although he might be able to establish a good moral character and a good professional standing by good, competent men in his own or other professions or callings outside of the medical profession," and it was held that rules and regulations of the board were subject to review by the courts to determine whether or not they were reasonable or unreasonable and discriminatory (citing *People v. Kane*). In *People v. Witte,* 315 Ill. 282, it was held that the Act itself fixes

the minimum standards of educational requirements and "the department is not permitted, under the Act, arbitrarily to prescribe minimum standards of educational requirements nor conduct examinations of applicants for licenses according to its arbitrary whim or caprice. The rules and regulations promulgated by the department are subject to review by the courts to determine whether or not they are reasonable [citing *Kettles v. People*]."

In this proceeding relator was a graduate of a medical college before the passage of the Medical Practice Act in 1923. As to such applicants, section 5 of the statute provides that at the time of graduation the medical college must have required as a prerequisite to graduation a four-year course of instruction and that the college must have been reputable and in good standing in the judgment of the department. It also specifies the number of months' school attendance required and the minimum time of the school course, and prescribes minimum standards of professional education to be enforced by the department. It does not appear from the record before us that the department has fixed any other standard than that prescribed by the Act. Nothing in the statute sets forth the subjects which are required to have been studied or the time required to have been spent on such subjects or the school grades required to have been received in such studies. Hence the standards which are prescribed in the Act are the only ones by which the qualifications of applicants are to be measured. A rule of the department adopted prior to 1942 provides that proof of the completion of a course of studies in a medical school and graduation therefrom shall be evidenced by a diploma which shall be submitted to the department by each applicant. Relator completed studies at medical colleges and high school for periods in excess of those required by the Act and received a diploma evidencing his degree as doctor of

medicine from the University of Breslau in 1917. He produced and delivered his diploma to the department. The Act further requires that the applicant shall be a graduate of a medical college which is reputable and in good standing in the judgment of the department. From the record before us it must be assumed that the colleges attended by the relator were reputable and in good standing in the judgment of the department. The rule of the department provides that a diploma from such college shall evidence the fact of graduation. Thus relator complied with the statutory provisions and with the rule of the department prescribing what might serve to evidence the fact of graduation.

It is conceded by respondents that "the court may take judicial notice of the facts of current history;" that "due to the tragic convulsions of Europe, many exiles from that unhappy continent have found asylum within the shores of the United States"; that "undoubtedly many of these refugees possess professional or other technological skill which could be exploited to the advantage of the people of the State of Illinois"; but it is urged that since there are others whose lack of qualifications is such that to permit them to hold licenses to practice professions such as medicine, with its virtual control over the life and death of patients, would be highly dangerous, the department has long insisted that all candidates for the license to practice medicine present certain specified credentials, which include a showing of the courses pursued in the institutions of higher learning, to be certified and authenticated by the institutions themselves, and not otherwise.

The primary purpose of the Medical Practice Act is to safeguard the public health by prescribing standards of medical and premedical studies for those who shall be permitted to treat human ailments

in all their branches, and the department of registration and education was created to determine in the first instance whether the applicant has submitted satisfactory evidence that "he has the preliminary and professional education required by this Act" (sec. 4), and if so, to admit him to the examination and issue a license if he passes successfully within the contemplation of the statute. The Act provides that each applicant for examination shall submit evidence satisfactory to the department. The proof required by the rule goes to the form, rather than to the substance of the evidence, and if an applicant can satisfy the department as to his qualifications by other satisfactory evidence, the department should be required to consider it and not arbitrarily insist on documents which admittedly cannot be produced. Under the "best evidence rule" which from early times has been repeatedly enunciated by the courts, the highest degree of proof of which the case from its nature is susceptible, must, if accessible, be produced; but where the evidence offered, while not of the highest degree or of the most satisfactory kind, is otherwise competent and is the best evidence which under the circumstances can be produced, and the absence of evidence of a higher degree or of a more conclusive character is not attributable to the fault of the party seeking to prove the fact in controversy, then the requirements of the best evidence rule are complied with and the evidence is admissible (32 C. J. S. Evidence, secs. 777, 779, pp. 701 *et seq.*). For the department to insist upon a regulation, without regard to the circumstances, which is more exacting than the commonly accepted rules of evidence under which courts operate daily, is an arbitrary and unreasonable requirement; and, under present conditions, to insist on original study books and records of German universities accompanied by "legalized translations," is a require-

ment impossible of fulfillment, tending to establish nothing prescribed by any standard fixed by the Act, and therefore unreasonable.

Accordingly, we are of opinion that the order of the superior court should be affirmed, and it is so ordered.

*Order affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.