STATE *ex rel.* JOSEPH H. SHEPPE

*v.*

WEST VIRGINIA BOARD OF DENTAL EXAMINERS, *et al.*

(No. 12183)

Submitted October 9, 1962.      Decided December 11, 1962.

*Quinlan, Nelson & Williamson, H. G. Williamson,* for relator.

*C. Donald Robertson,* Attorney General, *George H. Mitchell,* Assistant Attorney General, for respondents.

BERRY, JUDGE:

Relator, Joseph H. Sheppe, instituted this original proceeding in this Court on May 29, 1962, seeking a writ of mandamus directing the respondents, the West Virginia Board of Dental Examiners and the individual members thereof, to examine relator in the dental specialty of orthodontics. The petition alleges, in substance, that: relator was duly licensed to practice dentistry in this state on July 20,

1950, and thereafter continuously engaged in such practice in the City of Huntington, West Virginia, until July, 1959; in August, 1959, he enrolled in the University of Alabama School of Dentistry, an accredited institution, where he successfully completed in the month of July, 1960, one (1) year of postgraduate work in the specialty program of orthodontics; he returned to Huntington and resumed his practice of dentistry, limiting his practice to the field of orthodontics, and has so limited his practice for at least two (2) years; he is eligible to attempt the examination for a special certificate of qualification in orthodontics and has tendered the proper fee as required by law; and, notwithstanding the above allegations, the respondents have capriciously refused to accept and certify relator for examination in the special field of orthodontics, and continue to refuse to do so, concluding with the prayer hereinbefore mentioned.

This Court, on June 5, 1962, granted a rule directed to respondents requiring them to show cause why the writ should not issue as prayed for. Respondents appeared in compliance with the rule and demurred on the grounds that: (1) Mandamus will not lie in the instant case for the reason that relator has an adequate remedy at law under the provisions of Code, 30-1-9; (2) It affirmatively appears on the face of the petition that relator has not met the requirements for examination in that he has not completed at least one (1) year of graduate education in his chosen specialty in an accredited dental school as required by Sec. 3, Art. III, of the Rules and Regulations of the respondent Board, and that his application for examination cannot be considered under Sec. 4, Art. III, of said "Rules" because it does not show any time as a teacher, or any period of practice confined to the specialty in the office of a certified specialist, and, shows he had not completed twelve (12) years of practice in West Virginia at the time of filing his application; (3) On March 1, 1962, the West Virginia Orthodontic Society filed with the respondent Board a written complaint protesting the application of relator and questioning his qualifications for examination and certification and it became respondents' statutory duty to withhold any decision until such complaint had been fully investigated:

and (4) Code, 30-4-17a, as amended, vests in the respondent Board the authority to establish higher standards and additional requirements for any licensee who desires to hold himself out to the public as especially qualified in a branch or specialty of dentistry recognized by the Board.

Respondents also answered admitting the allegations as to relator's licensing and subsequent practice in this state until July, 1959, and his enrollment in the University of Alabama in August, 1959, but denying that relator has completed one (1) year of postgraduate work, asserting that he did not attend any classes after May 29, 1960. Respondents also admit in their answer the tendering of the proper fee by the relator, allege that they are without sufficient information to admit or deny the allegations as to the limiting of relator's practice, and deny that relator is eligible to attempt the prescribed examination or that respondents have acted capriciously or arbitrarily. The answer then reiterates the points asserted in the demurrer and in addition avers that since the institution of this proceeding, relator has circulated among the dentists of West Virginia and adjoining states a letter offering a course in all major orthodontic appliance techniques and therapy for $1,000.00 and that such conduct, inasmuch as relator has not been certified in such specialty, is in violation of Code, 30-4-7, as amended, and renders relator's license subject to suspension or revocation.

The foregoing answer was verified by three of the members of the respondent Board, two of the members refusing to verify the same and filing letters, in the form of individual answers, setting out their positions. Dr. A. Brooks Drake affirms his position that relator has met and complied with the necessary minimum requirements for examination, asserting that: The one (1) year requirement of postgraduate study refers to an academic, as distinguished from a calendar, year; Board records reveal that the Board "has previously accepted applications, examined the applicant and then withheld issuance of his specialty license until completion of additional training, upon completion of which the applicant was licensed without further examination. . .";

and, no compliance with any part of Sec. 4, Art. III of the "Rules" has been required of the majority of those previously licensed as specialists by the Board. Dr. Drake concludes: "In summary, may I take this opportunity to again repeat my often expressed opinion that these Rules and Regulations are very poorly written, incoherent, contradictory, in conflict with the state Code, and therefore not capable of unqualified interpretation." Dr. Paul L. Fiess, by letter, indicated his opinion that relator has complied with the requirements of Sec. 3, Art. III, but asserts a lack of documentary evidence as to relator's compliance with Secs. 4 and 5, Art. III, and his belief that such sections are not to be considered as alternative requirements to those set out in Sec. 3.

The following facts are stipulated: Relator was graduated from the dental school of The University of Maryland on June 10, 1950, receiving the degree of Doctor of Dental Surgery; on July 20, 1950, relator was duly licensed to practice in West Virginia and entered upon practice in Huntington, West Virginia; on or about August 3, 1959, relator enrolled in the University of Alabama and commenced a program of postgraduate study which relator contends he completed in July, 1960, but the dean of said school states that petitioner did not attend classes to anyone's knowledge after the graduation exercises of the University on May 29, 1960; on or about September 7, 1960, relator made application to the respondent Board for examination in orthodontics, which application was refused on June 30, 1961; on July 28, 1961, relator was informed by respondent that a ruling was being sought from the Attorney General with regard to his application; on January 3, 1962, relator was advised by the Board that a committee of specialists would be appointed to examine relator and he would be notified of the date of such examination; on March 1, 1962, the West Virginia Orthodontic Society filed a written complaint protesting the application of relator and questioning his qualifications for examination and certification as a specialist in orthodontics, of which protest relator was advised by letter of March 19, 1962, the letter also informing relator that the Board would meet in June,

1962, to review his application in the light of the protest; subsequent to the institution of this proceeding, relator was granted an audience by the Board at its June meeting, at which time the Board decided to refrain from taking any action until the matter was disposed of by this Court; and, the "Rules and Regulations" of the Board were relied upon by all parties in determining relator's eligibility for examination although said rules and regulations are not filed in the office of the Secretary of State as required by Code, 5-2-3.

Code, 30-4-7, as amended, provides that the Board may refuse to issue, or after issuance suspend or revoke, a license "to practice dentistry or dental hygiene" for, inter alia, "Announcing or otherwise holding himself out to the public as a specialist or as being specially qualified in any particular branch of dentistry or as giving special attention to any branch of dentistry or as limiting his practice to any branch of dentistry without first complying with the requirements established by the board of dental examiners for such specialty and having been issued a certificate of qualification in such specialty by the board."

Code, 30-4-17a, as amended, provides that:

"No licensee shall announce or otherwise hold himself out to the public as a specialist or as being specially qualified in any particular branch of dentistry, or as giving special attention to any branch of dentistry, or as limiting his practice to any branch of dentistry, unless he has first complied with the requirements established by the board of dental examiners for such specialty and has been issued a certificate of qualification authorizing him so to do.

"The board of dental examiners may establish higher standards and additional requirements for any licensee who desires to announce or otherwise hold himself out to the public as being specially qualified in a branch or specialty of dentistry recognized by the board. The board may give such examinations and secure such assistance as it may deem necessary in determining the qualifications of applicants.

"Application to the board for a certificate of qualification in a specialty of dentistry shall be upon such form and contain such information as the board may require and shall be accompanied by a fee of fifty dollars. A licensee found by the board to be qualified under the standards and other requirements promulgated by the board in the specialty indicated in his application shall be issued a certificate of qualification authorizing the licensee to announce or otherwise hold himself out to the public as specially qualified in the indicated specialty under such terms and in a manner approved by the board."

Sections 3, 4 and 5 of Article III of the purported "Rules and Regulations" require that an applicant for certification as a specialist:

"3. Shall have completed at least one year of graduate education in an accredited dental school in his chosen specialty, or the equivalent thereof. The Board reserves the right to determine the applicant's qualifications.

"(a) For applicants, without one year of graduate education in a recognized dental school, who feel that they are prepared to specialize by virtue of education gained through other sources, the following may be considered. The West Virginia Board of Dental Examiners will recognize no graduate or postgraduate education except that obtained on a university level.

"(b) Two years as a full-time demonstrator or clinical instructor in the subject in which he wishes to specialize in a dental school approved by the Board, or two years as an intern in a hospital or dental infirmary approved by the Board.

"4. The applicant shall present acceptable documentary evidence of completion of one or more of the following requirements:

"(a) One year as a full-time teacher or two years as a half-time teacher in the department of the specialty desired in a school approved by the West Virginia Board of Dental Examiners.

"(b) Three years of practice confined to the specialty in the office of a certified specialist, at-

tested to by three registered practitioners in the State of West Virginia.

"(c) Twelve years or more of practice in West Virginia, having shown a definite preference to a specialty, and having attained advance knowledge and experience in the special field through continued formal or informal education. His qualifications must be attested to by three registered practitioners in the State of West Virginia.

"5. The applicant shall have limited his practice to his chosen specialty for at least two years to be eligible for examination."

The first matter to be disposed of in this proceeding is the respondents' demurrer to the petition. The only ground set out in the demurrer that warrants consideration is that mandamus will not lie since relator has an adequate remedy under the provisions of Code, 30-1-9. The other grounds relate to questions of fact or denials of allegations contained in the petition and are not proper matters to be considered on a demurrer. Mandamus is an extraordinary proceeding and will not lie unless there is a clear legal right to the performance of the act demanded and there is no other adequate remedy. 12 M. J., Mandamus, Section 9; *Capon Valley Bank* v. *State Road Commission,* 111 W. Va. 491, 163 S. E. 44; *Myers* v. *State Compensation Commissioner,* 113 W. Va. 316, 167 S. E. 740; *Board of Education* v. *Lawson,* 113 W. Va. 60, 166 S. E. 696.

Code, 30-1-9, which the respondents assert provides an adequate remedy to the relator, provides for a review by the circuit court for a person who has been refused a license or registration for any cause other than failure to pass the examination given by the Board or whose license or registration has been suspended or revoked by the Board, if within thirty days after the decision of the Board the petition is presented in writing to the circuit court of the county in which such person resides. This statute is not available to the relator in the case at bar. The relator has not been refused a license or certificate to practice orthodontics but the Board has refused to allow him to take the examination in order to ascertain whether or not he is qualified to be

given a license to practice such specialty. The petition must be filed within thirty days from the decision of the Board in any event and no decision has been formally made by the Board in the case at bar.

Application was made to the Board to allow relator to take the examination to practice the specialty of orthodontics on September 7, 1960. Over nine months later, on June 30, 1961, the Board of Dental Examiners wrote the relator that they had unanimously decided not to accept his application for examination and certification as a specialist in orthodontics, but stated that upon receipt of additional information with regard to the relator's educational background, formal training, and experience, an attempt would be made by the Board to arrive at a fair and equitable decision. On July 28, 1961, the Board wrote relator that it would obtain a ruling from the attorney general with regard to taking further action on his application for examination and certification as a specialist in orthodontics. On January 3, 1962, the Board wrote relator that he would be allowed to take the examination and he would be notified as to the date of the examination. On March 19, 1962, the Board wrote relator that the West Virginia Orthodontic Society had protested the Board's action in allowing him to be examined as a specialist in orthodontics and a further review would be made with regard to the validity of his application. Thus it will be seen that the Board has yet to take definite action either allowing or refusing to allow relator to take the examination in question.

However, a period of over a year and a half had elapsed before this proceeding was instituted in this Court, and since the Board has failed to act within a reasonable time and is now resisting his application, we can assume it has refused to allow him to take the examination. *Stretch* v. *State Board of Medical Examiners* (N. J.) 95 A. 623. See also *Riggs* v. *State Road Commissioner,* 120 W. Va. 298, 197 S. E. 813. Although from the facts and circumstances of this case we can assume that the Board has refused to grant relator's application to take an examination, no hearing was held and no decision made from which to apply for review to

the Circuit Court of Cabell County under the provisions of Code, 30-1-9, which does not provide for a hearing de novo but gives the person who has been refused a license or registration, for any reason other than the failure to pass the examination, the right to have such decision, based on the record of the hearing before the Board, reviewed and determined by the circuit court. *Mingo County Medical Society* v. *Simon,* 124 W. Va. 493, 20 S. E. 2d 807; *State ex rel. Ballard* v. *Vest,* 136 W. Va. 80, 65 S. E. 2d 649. The relator therefore does not have an adequate remedy as contended by the respondents and it has been specifically held that mandamus will lie in such cases. *State ex rel. Ballard* v. *Vest, supra; People* v. *Thompson* (Ill.), 59 N. E. 2d 494; *Thomas* v. *State Board of Health,* 72 W. Va. 776, 79 S. E. 725, 49 LRA (NS) 150.

Both the relator and the respondents rely on the "Rules and Regulations for Certification of Specialists in West Virginia" to support their respective contentions. However, it is stipulated that these rules and regulations have never been filed in the office of the Secretary of State as required by Code, 5-2-3. The pertinent portions of these rules and regulations have been heretofore quoted. The answers of the respondents contesting the relator's right to take the examination in question are based on these rules and regulations and the statement of one of the members of the Board that the rules were "poorly written, incoherent, contradictory and therefore not capable of unqualified interpretation" is well taken. Another member of the Board was of the opinion that the relator had qualified in some respects but had not complied with Section 5 of the rules and regulations at the time he made his application. Section 5 provides for the applicant to limit his practice in his chosen specialty for at least two years to be eligible for the examination. This is in direct violation of statute, Code, 30-4-7, 17a, as amended, and is one of the points upon which the West Virginia Orthodontic Society protested his examination, asserting that he had so held himself out in violation of law. It is therefore easy to see why the relator was confused with regard to the requirements to be eligible to take the desired examination.

When the relator was licensed to practice dentistry in the State of West Virginia on July 20, 1950, there were no statutory requirements with regard to practicing any specialty in the profession of dentistry. The rules and regulations in question were promulgated by the Board of Dental Examiners in 1951. The Legislature amended the statute dealing with the practice of dentistry and specialization in connection therewith in 1955, Chapter 137, Acts of the Legislature, Regular Session, 1955, and the law as amended was in conflict with the rules and regulations adopted in 1951. Such rules and regulations should then have been changed to conform to the statute since it is the ultimate authority and no rules and regulations which are in conflict therewith can be enforced. Code, 5-2-3, which was enacted in 1955, required the Board to file its rules and regulations with the Secretary of State and further provided that if the Board failed to file two certified copies thereof on or before July 1, 1955, then such rules and regulations would become void and of no legal force and effect. Therefore, the rules and regulations relied upon in this case are null and void and have no application thereto whatsoever. 70 C.J.S., Physicians and Surgeons, § 13, p. 860; *Lake* v. *Mercer* (S. C.), 58 S. E. 2d 336.

The state through its agencies has a right to control and regulate the professions but such regulations must not be arbitrary or unreasonable and must conform to the laws made and provided for in such cases and to the federal and state constitutions. 70 C.J.S., Physicians and Surgeons, § 13, p. 856 et seq. See *Vest* v. *Cobb*, 138 W. Va. 660, 76 S. E. 2d 885; and *People* v. *Thompson, supra; Burden* v. *Hoover* (Ill.), 137 N. E. 2d 59.

The respondents also allege, as a reason for not having granted the relator's request for an examination in the specialty of orthodontics, that a written complaint protesting such examination was filed by the West Virginia Orthodontic Society and that the Board is authorized to establish higher standards and additional requirements for any licensee who desires to hold himself out as a specialist. It should be pointed out that there is no statutory provision

for the West Virginia Orthodontic Society to file any complaint in such cases and, although there is authority for the Board to establish higher standards and additional requirements under Code, 30-4-17a, as amended, none were legally established. It would therefore appear that the relator has complied with all of the valid requirements to take an examination to ascertain whether or not he is qualified to practice in the specialty of orthodontics in the State of West Virginia and that the Board should provide for such examination.

For the foregoing reasons the writ of mandamus as prayed for is granted.

*Writ granted.*