806 S.E.2d 465

Sergeant Robert E. FRUTH, II,
Plaintiff Below, Petitioner

v.

Greg A. POWERS, Sheriff of Mason County, and Mason County Deputy Sheriff's Civil Service Commission, Defendants Below, Respondents

No. 16-0797

Supreme Court of Appeals of West Virginia.

Submitted: September 19, 2017

Filed: October 23, 2017

Michael N. Eachus, Esq., Eachus & Finley, Esq., Gallipolis, Ohio, and Mark L. McMillian, Esq., Mark McMillian, Attorney

at Law, L.C., Charleston, West Virginia, Counsel for the Petitioner

Karen H. Miller, Esq., Joseph L. Amos, Jr., Esq., Miller & Amos, Attorneys at Law, Charleston, West Virginia, Counsel for the Respondent

Walker, Justice:

Sergeant Robert E. Fruth, II, was discharged from employment with the Mason County Sheriff's Department based on two separate incidents—he engaged in a verbal altercation with his spouse in public while on duty and he intentionally wrecked his police cruiser. He challenges the finding of just cause for the discharge made by the Mason County Civil Service Commission for Deputy Sheriffs ("the Commission") that was upheld by the Circuit Court of Mason County by order entered on July 29, 2016. Sgt. Fruth also claims he was denied procedural due process and that the Commission's practices and procedures were flawed. We find no error and affirm the decision of the circuit court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The incidents resulting in disciplinary action against Sgt. Fruth took place shortly after his then-wife, Melissa Searls (formerly Melissa Fruth), informed him that she wanted a divorce. At the time, Ms. Searls was employed with the Mason County Office of Emergency Medical Services (EMS) as an Emergency Medical Technician (EMT). On February 10, 2011, Sgt. Fruth, while on duty with the Sheriff's Department, contacted an EMS dispatcher to ask where he could find Ms. Searls. He also inquired as to the make and model of the personal vehicle of her coworker, Trey Anderson. Sgt. Fruth believed his wife was involved romantically with Mr. Anderson.

Later that day, while still on duty, Sgt. Fruth confronted Ms. Searls and Mr. Anderson in a restaurant parking lot. Ms. Searls was on duty and her assigned ambulance was in the parking lot, as was Mr. Anderson's personal vehicle. While armed and in uniform, Sgt. Fruth reportedly blocked Mr. Anderson's personal vehicle with his police cruiser and engaged in a loud, verbal altercation with Ms. Searls and Mr. Anderson. Ms. Searls and Mr. Anderson claimed that Sgt. Fruth made threats toward them, including "I'll blow your F-ing head off" and "You will get yours. I promise."

According to Deputy Robert Wilson, Sgt. Fruth's former co-worker, Sgt. Fruth came to his home later that day and said that he "had to do something to get [his wife's] attention."[1] The next day, in the early morning hours, Sgt. Fruth again contacted the EMS dispatcher and learned that Ms. Searls's ambulance would be dispatched on the next emergency call. Shortly thereafter, Sgt. Fruth was involved in a single car accident in his police cruiser. Sgt. Fruth later claimed he was attempting to avoid a deer in the road. According to Sgt. Clifford Varian, one of Sgt. Fruth's co-workers and the first to arrive on the scene, Sgt. Fruth told him that his wife was going to be the EMS responding to the scene and requested that Sgt. Varian relay to Ms. Searls that "everything will be okay" and to ask "if they could work things out." Sgt. Fruth was hospitalized following the accident.

Later that day, Ms. Searls filed a Domestic Violence Petition (DVP) against Sgt. Fruth. Sgt. Fruth was immediately suspended with pay, pending the disposition of the DVP. Soon after, Sgt. Fruth was charged with two criminal violations of the DVP for attempting to contact Ms. Searls through other persons and for possession of ammunition. On February 24, 2011, the Sheriff suspended Sgt. Fruth without pay pending disposition of the criminal charges.

The DVP was dismissed on June 22, 2011, by the Family Court of Mason County. After a hearing on the merits, the family court concluded that Ms. Searls had failed to prove

---

1. Concerned for Sgt. Fruth's mental health, Deputy Wilson subsequently sought the help of the Sheriff's Department and filed a mental hygiene petition concerning Sgt. Fruth because Sgt. Fruth expressed suicidal thoughts, showed Deputy Wilson a "suicide note," and appeared to be consuming alcohol while also abusing prescription drugs. The petition was later withdrawn to allow Sgt. Fruth to seek treatment voluntarily.

her allegations of domestic violence or abuse by a preponderance of evidence. The criminal charges relating to alleged violations of the DVP, however, were still pending at that time. Accordingly, Sgt. Fruth remained on suspension without pay.

On January 4, 2012, Sgt. Fruth was indicted for reckless driving and felony destruction of property based on the allegation that he had intentionally wrecked his police cruiser. On May 8, 2012, the Sheriff instructed Cpl. Forrest Terry with the Sheriff's Department to conduct an internal investigation of Sgt. Fruth's conduct as a law enforcement officer and to determine whether or not he should continue to serve in that capacity. At that time, Sgt. Fruth remained on unpaid suspension.

Immediately following a pretrial hearing on the criminal charges against him, Sgt. Fruth requested reinstatement on May 29, 2012. In support of the request, Sgt. Fruth claimed that his "court cases" had been dismissed—ostensibly referencing that he had agreed to plead no contest to a misdemeanor charge of failure to maintain control of a vehicle in exchange for the dismissal of the felony destruction of property and reckless driving charges. This was the first request for reinstatement made by Sgt. Fruth in the fifteen months since his suspension. The Sheriff denied the request and explained that the decision was based on (1) the February 11, 2011 vehicle accident, which the department, after investigation, deemed intentional; (2) the anticipated plea to the misdemeanor offense of failure to maintain control; and (3) the pending criminal charges for violation of the DVP. Sgt. Fruth then filed a motion for immediate reinstatement with the Commission.

On June 5, 2012, Sgt. Fruth's plea of no contest to failure to maintain control of a vehicle was accepted by the circuit court and the felony charges were dismissed. In the same Motion and Order [for] Dismissal, the pending criminal charges for violation of the DVP also were dismissed.

On June 12, 2012, the Sheriff continued Sgt. Fruth's suspension pending further investigation of the events on February 10 and 11, 2011. Although notified of his right to have the matter heard by the Commission, Sgt. Fruth did not request and was not afforded a predisciplinary hearing for his continued suspension. On September 7, 2012, Cpl. Terry issued his investigative report, recommending termination based on Sgt. Fruth's on-duty conduct.

In the meantime, the Commission held a hearing on Sgt. Fruth's motion for immediate reinstatement on September 13, 2012. The Commission limited its inquiry to the February 11 and 24, 2011 suspensions, which specifically concerned only the filing of the DVP and the associated criminal charges, all of which had been dismissed. Accordingly, the Commission ordered Sgt. Fruth's reinstatement and back pay from June 5, 2012, the date the plea deal was entered.

On September 14, 2012, the investigative report recommending termination was forwarded to the Sheriff who agreed with Cpl. Terry's conclusion. The Sheriff notified Sgt. Fruth and his legal counsel that he was recommending that Sgt. Fruth be discharged and informed them of his right to a predisciplinary hearing following an investigation pursuant to West Virginia Code § 17-14C-3. Sgt. Fruth exercised that right and on October 10, 2012, the Deputy Sheriffs' Hearing Board ("Hearing Board") conducted a hearing and unanimously agreed with the discharge of Sgt. Fruth. Sgt. Fruth appealed to the Commission claiming, among other things, that his procedural due process rights were violated because he was not afforded predisciplinary hearings prior to his suspensions. He also asserted that the Sheriff had merely "re-packaged" the allegations the Commission had already dismissed. The Commission overturned the discharge and ordered that Sgt. Fruth be reinstated with back pay, finding that there were procedural infirmities and that the Sheriff's investigation did not contain any new grounds warranting discharge.

The Sheriff's Department appealed the Commission's decision to the Circuit Court of Mason County. Sgt. Fruth likewise appealed, arguing that his back pay award should date from February 24, 2011, when he was suspended without a predisciplinary hearing, as

opposed to the date his plea of no contest was entered. The circuit court remanded the case to the Commission for a full evidentiary hearing to cure any procedural due process violations and to allow evidence on all allegations stemming from the Sheriff's investigation.

The Commission held a full evidentiary hearing in January 2014 and concluded, unanimously, that just cause existed for Sgt. Fruth's discharge. However, the initial decision lacked findings of fact or conclusions of law. Sgt. Fruth appealed to the Circuit Court of Mason County, asserting various assignments of error, including the failure to make findings of fact and conclusions of law. The circuit court again remanded the case to the Commission, ordering it to make sufficient findings to allow for meaningful appellate review. Both parties submitted proposed findings of fact and conclusions of law. The Commission entered an order with findings and again concluded that Sgt. Fruth's termination was supported by just cause. Specifically, the Commission found that either the public altercation in the restaurant parking lot while on duty or the intentional wreck of his police cruiser alone provided just cause for termination.

Upon review of the Commission's findings of fact and conclusions of law, the circuit court affirmed the Commission's decision on July 29, 2016. Sgt. Fruth then appealed to this court.

## II. STANDARD OF REVIEW

 Sgt. Fruth appeals the order of the Circuit Court of Mason County affirming the Commission's decision to uphold his discharge from employment. We have held that "[a] final order of a deputy sheriffs' civil service commission, based upon findings not supported by the evidence, upon findings contrary to the evidence, or upon a mistake of law, will be reversed and set aside by this Court upon review."[2] Further, the findings of the Civil Service Commission are governed by the following deferential standard:

An appellate court may reverse a decision of the Civil Service Commission for Deputy Sheriffs, W. Va. Code § 7–14–1 (1991), *et seq.*, as clearly wrong or arbitrary or capricious only if the Commission used a misapplication of the law, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the Commission, or offered an explanation that was so implausible that it could not be ascribed to a difference in view or the product of Commission expertise.[3]

## III. ANALYSIS

While Sgt. Fruth identifies eleven separate assignments of error,[4] in essence they present the following bases for appeal: (1) he was denied procedural due process; (2) the Commission's practices and procedures were flawed; and (3) the Commission's finding of just cause was "clearly wrong, arbitrary and capricious, misapplied the law, and [was] contrary to the evidence." We address each of these issues in turn.

### A. *Procedural Due Process*

Sgt. Fruth alleges that his procedural due process rights were violated. First, Sgt.

2. Syl. Pt. 1, *Mangum v. Lambert,* 183 W.Va. 184, 394 S.E.2d 879 (1990).

3. Syl. Pt. 3, *Messer v. Hannah,* 222 W. Va. 553, 668 S.E.2d 182 (2008).

4. Specifically, Sgt. Fruth's eleven assignments of error are as follows: (1) the disciplinary action included allegations and proceedings too remote in time in violation of the principles in *State ex rel Fillinger v. Rhodes,* 230 W. Va. 560, 741 S.E.2d 118 (2013); (2) the Commission erroneously admitted the expert testimony of Stephen Cogar, Esq.; (3) the Commission erroneously admitted Cpl. Terry's investigative report as substantive evidence; (4) the Commission erroneously admitted Ms. Searls's prior testimony before the Hearing Board; (5) the Commission arbitrarily applied the Rules of Evidence to the benefit of the Sheriff; (6) his right to procedural process due under W. Va. Code § 7-14C-3 was violated; (7) the Commission erred by adopting the Sheriff's proposed order verbatim; (8) the circuit court abused its discretion when it remanded the matter for a full evidentiary hearing; (9) the Commission's finding of just cause for his termination was clearly wrong, arbitrary and capricious, was a misapplication of the law, and contrary to the evidence; (10); the Commission admitted evidence relating to a domestic violence action and the motor vehicle accident in violation of the principles of res judicata and collateral estoppel; and (11) cumulative error.

Fruth contends that he was denied predisciplinary hearings and thus, the Commission failed to resolve the allegations against him within the statutory time frames he contends are required under *SER Fillinger v. Rhodes*.[5] We assume that Sgt. Fruth is referencing *Rhodes* for its reliance on language from *State ex rel. Sheppe v. West Virginia Bd. of Dental Examiners*,[6] In *Sheppe*, this Court held that "[i]n the absence of a specific time limit, the failure of a state board or agency to take decisive action within a reasonable time, upon a matter properly before it, will be assumed to be a refusal of the action sought."[7] In *Rhodes*, we employed that language when examining the failure of the West Virginia Board of Examiners for Registered Professional Nurses to conduct a hearing to resolve complaints within a reasonable time. We ultimately determined that the nursing board effectively had denied the petitioner an opportunity to be heard in opposition to the allegations against her by repeatedly continuing scheduled hearings.[8]

■ On appeal to this Court, Sgt. Fruth contends that because he was not provided predisciplinary hearings, the Commission failed to take decisive action within its statutory time frame [9] and therefore lacked the authority to subject him to discipline. Although Sgt. Fruth arguably set out this issue

generally as an assignment of error to the circuit court below, Sgt. Fruth did not argue or discuss it in his petition for appeal to the circuit court.[10] Thus, the circuit court neither considered this assignment of error, nor made any conclusions or findings relating to it. We deem errors waived where they are not argued in the briefs, but are merely mentioned in passing.[11] Moreover, "[o]ur general rule is that nonjurisdictional questions ... raised for the first time on appeal, will not be considered." [12] Because this issue is raised for the first time on appeal to this Court, we deem it waived.

■ Second, Sgt. Fruth raises the lack of predisciplinary hearings to challenge not only his discharge, but also the circuit court's authority to remand for a full evidentiary hearing. Below, Sgt. Fruth raised violations of the process he alleges he was due under West Virginia Code § 7-14C-3. This statutory provision addresses the hearing board procedure, in pertinent part, as follows:

(a) If the investigation or interrogation of a deputy sheriff results in the recommendation of some punitive action, then, before taking punitive action the sheriff shall give notice to the deputy sheriff that he or she is entitled to a hearing on the issues by a hearing board. The notice shall

---

**5.** 230 W. Va. 560, 741 S.E.2d 118 (2013).

**6.** 147 W. Va. 473, 128 S.E.2d 620 (1962)

**7.** *Id.* at syl. pt. 2.

**8.** *Rhodes*, 230 W. Va. at 567, 741 S.E.2d at 125.

**9.** As discussed below, West Virginia Code § 7-14-7(a) provides that when a sheriff's deputy demands it, the Commission "[must hold a public hearing] within a period of ten days from the filing of the charges in writing or the written answer thereto, whichever shall last occur."

**10.** In his Petition for Appeal to the circuit court, Sgt. Fruth raised as an assignment of error that:
The multiple and duplicitous proceedings held against the Petitioner relating to identical charges of misconduct, conduct which was remote in time (and even preceded the Petitioner's employment by the Mason County Sheriff's Department) combined with the procedural delays occasioned by Respondent Sheriff, effectively bar the action at issue as being in violation of the principles announced

by our Supreme Court in *State ex. rel. Fillinger v. Rhodes*, 230 W.Va. 560, 741 S.E.2d 118 (2013).
However, Sgt. Fruth made no indication as to which *Rhodes* principles he was referring, or why he believed proceedings against him were in violation of *Rhodes* despite being factually inapposite to the circumstances in that case. Indeed, Sgt. Fruth made no further mention of *Rhodes* whatsoever beyond the assignment of error at the beginning of his petition to the circuit court.

**11.** *See* Syl. Pt. 6, *Addair v. Bryant*, 168 W. Va. 306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived."); *In re Edward B.*, 210 W. Va. 621, 625 n.2, 558 S.E.2d 620, 624 n.2 (2001) ("Because the errors, as assigned in the Appellant's petition for appeal, were neither assigned nor argued in the Appellant's brief, they are hereby waived.").

**12.** *Hoover v. W. Va. Bd. of Med.*, 216 W. Va. 23, 26, 602 S.E.2d 466, 469 (2004) (quoting *Shaffer v. Acme Limestone Co., Inc.*, 206 W. Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)).

state the time and place of the hearing and the issues involved and be delivered to the deputy sheriff not less than ten days prior to the hearing. An official record, including testimony and exhibits, shall be kept of the hearing.

(b) The hearing shall be conducted by the hearing board of the deputy sheriff except that in the event the recommended punitive action is discharge, suspension or reduction in rank or pay, and the action has been taken, the hearing shall be pursuant to the provision of section seventeen [§ 7-14-17], article fourteen of this chapter, if applicable. Both the sheriff and the deputy sheriff shall be given ample opportunity to present evidence and argument with respect to the issues involved.[13]

Conversely, the Sheriff argues that West Virginia Code § 7-14C-3 directs that the hearing in this case be conducted in accordance with West Virginia Code § 7-14-17. West Virginia Code § 7-14-17 addresses hearings before the commission:

In every case of such removal, discharge, suspension or reduction, a copy of the statement and the reasons therefor and of the written answer thereto, if the deputy desires to file such written answer, shall be furnished to the civil service commission and entered upon its records. If the deputy demands it, the civil service commission shall grant a public hearing, which hearing shall be held within a period of ten days from the filing of the charges in writing or the written answer thereto, whichever shall last occur.

Thus, the Sheriff argues that because Sgt. Fruth failed to request a hearing after his February 2011 suspensions, he was not entitled to a hearing before the Commission until his discharge was recommended as a result of the investigation. However, an analysis of Sgt. Fruth's right to a hearing under either, or both, of these statutes is moot in light of the circuit court's remand for a full evidentiary hearing. As recognized by the circuit court

below, we have held that "[t]he appropriate remedy for procedural due process errors in an administrative hearing is to remand the case with directions to remedy the defect."[14] The circuit court remanded the case for a full evidentiary hearing in order to cure the errors raised by both parties. Through this remand to the Commission, any defects in procedural due process were cured and Sgt. Fruth has now been afforded the full extent of the process he was due. Sgt. Fruth did not raise any further procedural due process errors after the circuit court's remand and has not argued or demonstrated that the remand was insufficient to cure the defects in procedural due process. Accordingly, we find that Sgt. Fruth's assignments of error relating to the prediscipinary hearings are now moot.

## B. Commission Practices and Procedures

Several of Sgt. Fruth's assignments of error relate to the Commission's practices and procedures. Specifically, Sgt. Fruth challenges (1) the Commission's wholesale adoption of the Sheriff's proposed findings of fact and conclusions of law; (2) the Commission's failure to abide by the West Virginia Rules of Evidence; and (3) the Commission's failure to apply the doctrines of res judicata and collateral estoppel. We address these assignments of error in turn.

On remand to the Commission to make findings of fact and conclusions of law, both parties were provided the opportunity to propose such findings and conclusions for the Commission's review and adoption. Although it invites criticism to adopt one party's proposal verbatim, it is not error unless the law or facts are inaccurate. We have held that "[a]s an appellate court, we concern ourselves not with who prepared the findings for the circuit court, but with whether the findings adopted by the circuit court accurately reflect the existing law and the trial record."[15] Further, as we have explained, "[the court's] action in adopting the findings

13. W. Va. Code § 17-14C-3.

14. *Ashley v. McMillian*, 184 W. Va. 590, 593, 402 S.E.2d 259, 262 (1991) (citing *Clarke v. W. Va. Bd. of Regents*, 166 W. Va. 702, 279 S.E.2d 169 (1981)).

15. *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 214, 470 S.E.2d 162, 168 (1996).

of facts prepared by counsel for [one party] operate[s] to make such findings the formal findings of the court. . . . and such findings of facts, as so found by the court, should not be rejected, vacated or disturbed for that reason."[16] We find these standards applicable in Commission proceedings, but do not find any errors of law or inaccurate factual findings on the record before us.

Sgt. Fruth's specific issues with the order are stylistic rather than substantive—Sgt. Fruth disagrees with the inferences that may be made from the order's wording. Specifically, Sgt. Fruth contends that the order as drafted by the Sheriff insinuates that Sgt. Fruth was uncooperative with the investigation by refusing to meet with those investigating his conduct. Sgt. Fruth takes issue with that insinuation because he believes it raises the inference that refusing to meet with investigators was misconduct. Sgt. Fruth also takes issue with the order generalizing that Sgt. Fruth was offered a hearing "pursuant to W. Va. Code" rather than referencing a specific code section. He contends that this is one of several procedural aspects that were generalized in the order in an effort to sweep the due process violations under the rug.

We neither find that the Commission's findings in this regard are contrary to the evidence presented nor that the findings reflect patently inaccurate facts or law. Rather, the Commission's findings reflect its view of the evidence presented, regardless of Sgt. Fruth's disagreement with whatever inferences may be drawn from those findings. The Commission was free to adopt portions of Sgt. Fruth's proposed order and declined to do so. As noted above, we apply a highly deferential standard of review to the factual findings of the Commission, and the law as stated is correct.[17] Therefore, it is not reversible error for the Commission to have adopted the Sheriff's proposed findings of fact and conclusions of law as its own.

■ Next, we consider whether it was improper for the Commission to have admitted evidence allegedly in violation of the West Virginia Rules of Evidence. Sgt. Fruth raises three distinct admissions that he claims run afoul of our Rules of Evidence: (1) the "expert" testimony of Steven Cogar, Esq., who was permitted to testify as to police investigation procedures and the propriety of Sgt. Fruth's discharge; (2) Ms. Searls's prior statements in violation of the hearsay rule; and (3) the investigative report of Cpl. Terry in violation of the hearsay rule.

West Virginia Code § 7-14-6(1) provides that the civil service commission for deputy sheriffs in each county "shall prescribe and enforce rules and regulations for carrying into effect the provisions of this article." Accordingly, the Commission in this case opted to use the West Virginia Rules of Evidence "as a guide only." While Sgt. Fruth argues that admission of these items of evidence did not comport with our Rules of Evidence, he has not cited any authority obligating the Commission to have strictly followed those rules. Our review of the record does not indicate that the Commission's application of its rules was arbitrary or wholly benefitted one party. Because the Commission was entitled to apply its own rules as necessary to conduct its investigation into whether just cause existed for Sgt. Fruth's termination, we do not find that the Commission erred in admitting this evidence and therefore need not analyze whether the evidence would be admissible under the Rules of Evidence.

■ Finally, Sgt. Fruth argues that the Commission violated the principles of res judicata and collateral estoppel by admitting evidence related to the DVP, his criminal charges for violation of the DVP, and his indictment for wrecking the police cruiser. He alleges that res judicata and collateral estoppel operate to preclude the Commission from considering these criminal charges because they were previously dismissed or were resolved by a plea deal. Res judicata and collateral estoppel both preclude relitigation of matters that have previously been decided. As to the applicability of res judicata, we have explained that

---

**16.** *South Side Lumber Co. v. Stone Constr. Co.,* 151 W. Va. 439, 442, 152 S.E.2d 721, 723 (1967).

**17.** *See* Syl. Pt. 3, *Messer,* 222 W. Va. at 558, 668 S.E.2d at 187.

[b]efore the prosecution of a lawsuit may be barred on the basis of *res judicata*, three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.[18]

Similarly, as to collateral estoppel, we have found:

Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[19]

Generally res judicata applies in a subsequent action between the same parties while collateral estoppel more broadly applies to issues. As we have explained this distinction:

*Res judicata* generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or the issues that could have been decided in the earlier action. A claim is barred by *res judicata* when the prior action involves identical claims and the

same parties or their privies. Collateral estoppel, however, does not always require that the parties be the same. Instead, collateral estoppel requires identical issues raised in successive proceedings and requires a determination of the issues by a valid judgment to which such determination was essential to the judgment.[20]

■■■■ Here, Sgt. Fruth contends that either res judicata or collateral estoppel would operate to prevent the Commission from approving his discharge because a circuit court has already addressed his criminal charges on the merits through dismissal or acceptance of his plea of no contest. However, Sgt. Fruth's argument misses several important aspects that would preclude the application of collateral estoppel or res judicata. First, the criminal justice system is an entity and jurisdiction that is separate and distinct from the Commission with notably different standards of proof.[21] Second, the Sheriff was not a party to any of the proceedings relating to his criminal convictions.[22] Finally, the dismissal of or plea to the criminal charges has no bearing on employment. Speaking to this exact issue, we have concluded that "[t]he dismissal of criminal charges that prompted initial disciplinary action against a public employee does not preclude a public official from administering further disciplinary action, including discharge." [23] Further, we have held that "[s]eriously wrongful conduct by a civil service employee can lead to dismissal even if it is not a technical violation of any statute. The test is not whether the conduct breaks a specific law, but rather whether it is potentially damaging to the

---

18. Syl. Pt. 4, *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W.Va. 469, 498 S.E.2d 41 (1997).

19. Syl. Pt. 1, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

20. *Id.* at 9, 459 S.E.2d at 120 (citations omitted).

21. *See* syl. pt. 3, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995) ("[F]or purposes of [collateral estoppel], issues and procedures are not identical or similar if the second action involves application of a different legal standard or substantially different procedural rules, even though the factual settings of both suits may be the same.").

22. *See id.* at 13, 459 S.E.2d at 124 (holding that there was no privity so as to apply res judicata because the Department of Health and Human Resources is granted statutory authority to investigate complaints and take action against its personnel, while the prosecuting attorney's interest is in having guilt or innocence determined under the applicable criminal law and the prosecuting attorney has no control over the litigation of charges made by the Department).

23. Syl. Pt. 2, *Neely v. Mangum*, 183 W. Va. 393, 396 S.E.2d 160 (1990).

rights and interests of the public." [24] Based on this precedent, it would have been improper under these circumstances for the Commission to apply res judicata or collateral estoppel to preclude evidence of the DVP, the criminal charges for violation of the DVP, and the criminal charges that arose from wrecking his police cruiser.

### C. Just Cause

As to the merits of his discharge from employment, Sgt. Fruth contends that the Sheriff failed to prove just cause for the termination. In considering the propriety of a discharge of a deputy sheriff, we have held:

> W. Va. Code, 7-14-7 (1981), requires that dismissal of a deputy sheriff covered by civil service be for just cause, which means misconduct of a substantial nature directly affecting the rights and interests of the public, rather than upon trivial or inconsequential matters, or mere technical violations of statute or official duty without a wrongful intention.[25]

In examining the decision of the Commission, we may only set aside that finding as "arbitrary or capricious" if "the Commission used a misapplication of the law, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the Commission, or offered an explanation that was so implausible that it could not be ascribed to a difference in view or the product of Commission expertise." [26] While the procedural aspects of this case are complex, the facts surrounding the two incidents on which the discharge was based are more straightforward.

The record demonstrates that ample evidence was presented to the Commission to support a finding of just cause for Sgt. Fruth's discharge. The Commission found that either the public argument in the restaurant parking lot *or* the intentional wrecking of his police cruiser would have been sufficient to discharge Sgt. Fruth for just cause. Sgt. Fruth did not contest that he and Ms.

Searls were both on duty and in a public parking lot at the time of their altercation. The Commission heard evidence of threats made to Ms. Searls and Mr. Anderson. The Commission heard the testimony of the EMS dispatcher who confirmed that Sgt. Fruth had contacted him while on duty as a means to locate Ms. Searls and to ascertain the make and model of Mr. Anderson's vehicle. Taken together, it was not against the weight of the evidence that the Commission found Sgt. Fruth's conduct in the restaurant parking lot sufficient to discharge him from employment.

Alternatively, the Commission determined that the intentional wrecking of the police cruiser also provided sufficient grounds for Sgt. Fruth's discharge. The EMS dispatcher testified that Sgt. Fruth again used him as a resource to establish which ambulance would be called out to the next emergency scene. Considered in totality, Sgt. Fruth's statements to Deputy Wilson on his need to "get [his wife's] attention," Deputy Wilson's testimony as to Sgt. Fruth's emotional issues and potential substance abuse, the "suicide note," and testimony that the skid marks in the road could be consistent with either an intentional or unintentional wreck, it is not contrary to the evidence for the Commission to have concluded that Sgt. Fruth intentionally wrecked his cruiser. There was abundant evidence heard by the Commission to support its finding that Sgt. Fruth was not fit to continue as a law enforcement officer. Sgt. Fruth's disagreement with the conclusions drawn from the evidence presented does not render them arbitrary, capricious, or clearly wrong. We find no grounds on which to overturn the Commission's findings.[27]

### IV. CONCLUSION

For the foregoing reasons, we find no reversible error and affirm the circuit court's decision to uphold the Commission's decision

---

24. Syl. Pt. 5, *Mangum v. Lambert*, 183 W. Va. 184, 394 S.E.2d 879 (1990).

25. *Id.* at syl. pt. 2.

26. *Messer*, 222 W. Va. at 558, 668 S.E.2d at 187.

27. Because we find no error with the circuit court's order, we find no cumulative error exists upon which to base a reversal of such order.

**820**

to discharge Sgt. Fruth from employment as a Mason County deputy sheriff.

Affirmed.