648 S.E.2d 338

**STATE of West Virginia ex rel. Stephanie Sue GIBSON, Petitioner,**

v.

**Honorable John S. HRKO, Judge of the Circuit Court of Wyoming County, and G. Todd Houck, Prosecuting Attorney for Wyoming County, West Virginia, Respondents.**

No. 33203.

Supreme Court of Appeals of West Virginia.

Submitted: Jan. 9, 2007.

Decided: Feb. 15, 2007.

Concurring and Dissenting Opinion of Justice Starcher April 27, 2007.

ment and to prohibit a trial. On appeal, Mrs. Gibson argues that the circuit court committed error in failing to enforce her plea agreement. Based upon the parties' arguments, the documents and briefs filed with this Court, and the pertinent authorities, we affirm the decision by the circuit court. Accordingly, we deny the writ of prohibition.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The petitioner, Stephanie Sue Gibson, is married to Billy Gibson (hereinafter "husband" or "Mr. Gibson"). Mr. Gibson burglarized the home of an elderly man, and severely beat and robbed him. The State alleged that Mrs. Gibson was the driver and lookout during the commission of the crime. She was charged with accessory in the commission of burglary, aggravated robbery, and malicious wounding. Upon her arrest, Mrs. Gibson gave a statement implicating her husband as the perpetrator of the crimes, and she further attempted to absolve herself of the crime by providing an alibi defense.

Billy Gibson's trial was set for August 21, 2006, and the prosecuting attorney suspected that Mr. Gibson intended to waive spousal immunity. The prosecution and Mrs. Gibson, along with her counsel, worked out an oral agreement. According to these negotiations, Mrs. Gibson had agreed to testify against her husband if he did not assert the spousal privilege. Then if, during her testimony, Mrs. Gibson asserted her 5th Amendment right against self-incrimination, the prosecutor had agreed to offer her immunity in exchange for her testimony, pending the trial court's approval thereof.[1] At oral argument before this Court, the prosecution referred to this immunity as use immunity, meaning that anything testified to by Mrs. Gibson while on the stand could not be used against her at a later proceeding. However, after the jury selection process began, Billy Gibson entered into a plea agreement to malicious wounding. The other charges against Mr. Gibson were dismissed. Thus,

Wilbert A. Payne, Beckley, for the Petitioner.

G. Todd Houck, Prosecuting Attorney, Pineville.

PER CURIAM.

The petitioner, Stephanie Sue Gibson (hereinafter "wife" or "Mrs. Gibson"), seeks a writ of prohibition to enforce a plea agree-

---

1. Mrs. Gibson alleges that a component of the agreement was that all charges against her would be dropped. The State disagrees and alleges that dismissal was never discussed.

Mrs. Gibson was not afforded the opportunity to testify against her husband.

Thereafter, on September 8, 2006, Mrs. Gibson appeared in circuit court for a status hearing.[2] Her attorney requested that the State honor its offer of immunity and dismiss the indictment. The State refused, citing the fact that dismissal was never contemplated and because Mrs. Gibson's part of the deal for immunity had not been executed since she did not testify against her husband due to his peremptory plea agreement. The circuit court agreed with the State and reasoned that plea agreements are unilateral contracts where one party makes a promissory offer and the other party accepts by performing an act to fulfill the contract. In this case, the trial court reasoned that Mrs. Gibson performed no act as she did not testify against her husband because his plea agreement preempted the need for her testimony. Thus, the circuit court refused to enforce the plea agreement, but found that negotiations with the State tainted the process. Consequently, the trial court prohibited the State from introducing any evidence derived from Mrs. Gibson or her attorney during plea negotiations. Mrs. Gibson now seeks a writ of prohibition from this Court asking that the plea agreement be enforced and that a trial be prohibited.

## II.

## STANDARD OF REVIEW

■ This matter comes before this Court as a writ of prohibition. It has been stated that " '[p]rohibition lies only to restrain inferior courts from proceedings in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers, and may not be used as a substitute for [a petition for appeal] or certiorari.' Syl. Pt. 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953)." Syl. pt. 3, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). Further guidance is provided as follows:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *id.* Mindful of these applicable guidelines, we will now consider the substantive issues raised herein.

## III.

## DISCUSSION

■ On appeal to this Court, Mrs. Gibson argues that the plea agreement should be enforced because she detrimentally relied on the offer of immunity and that the charges should be dismissed. She acknowledges that she did not testify against her husband; however, that was through no fault of her own that he decided to enter a plea agreement prior to her opportunity to take the stand. She further speculates that her presence at trial, along with the knowledge that she was going to testify against him, is what compelled her husband to enter into a plea.

The State responds by contending that the circuit court was correct in refusing to enforce the plea agreement. Because Mr. Gib-

**2.** Mrs. Gibson was being held in jail pursuant to a guilty plea entered on unrelated misdemeanor

charges.

son entered a guilty plea, Mrs. Gibson was never called to testify, which prevented her from being offered use immunity for her testimony. The State avers that a plea agreement never existed, but rather, that a conditional offer of immunity existed if approved by the circuit court and if Mrs. Gibson testified. However, the State also argues that Rule 11 grants the trial court discretion in accepting or refusing a plea bargain, and the judge was within his bounds to deny the plea agreement, especially because the State also objected. Significantly, the State avers that Mrs. Gibson's testimony was always tenuous because her husband held the power to decide whether she testified based on whether he asserted his spousal privilege.[3]

In this case, Mrs. Gibson avers that she entered into a valid plea agreement that should be enforced. To analyze this case, we must determine if an enforceable plea agreement existed. Under Rule 11 of the West Virginia Rules of Criminal Procedure, the procedure for a plea agreement is as follows:

*(e) Plea Agreement Procedure. -*

(1) *In general.*—The attorney for the state and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the state will do any of the following:

(A) Move for dismissal of other charges; or

(B) Make a recommendation or agree not to oppose the defendant's request for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) Agree that a specific sentence is the appropriate disposition of the case; or

(D) Agree not to seek additional indictments or informations for other known offenses arising out of past transactions.

The court shall not participate in any such discussions.

We note that nowhere in the facts of this case is it argued that Mrs. Gibson was planning on entering a guilty plea or a plea of nolo contendere to any charges. In fact, she never incriminated herself during any statements made to police. After her arrest, she gave a voluntary statement implicating her husband and absolving herself of any involvement in the commission of the crime. During discussions with the prosecuting attorney regarding a possible grant of immunity, Mrs. Gibson offered a witness who would further incriminate her husband and support her alibi defense. The intent of any agreement with Mrs. Gibson was to elicit incriminating evidence against her husband and then to offer her immunity for any testimony implicating herself, subject to circuit court approval. Thus, there was no plea agreement, *per se*, for the circuit court to enforce. *See generally State ex rel. Simpkins v. Harvey*, 172 W.Va. 312, 305 S.E.2d 268 (1983) (standing for the proposition that a defendant cannot compel performance of plea bargain agreement unless he enters plea of guilty or otherwise acts to his substantial detriment in reliance on the agreement), *overruled on other grounds by State ex rel. Hagg v. Spillers*, 181 W.Va. 387, 382 S.E.2d 581 (1989).

However, even assuming *arguendo* that there was a valid plea agreement, we have previously held that a trial court is under no obligation to accept such an agreement. *See* W. Va. R.Crim.P. 11 (recognizing court's obligation to inquire into the accuracy of a guilty plea and satisfaction that there is a factual basis for the plea); Syl. pt. 2, *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 465 S.E.2d 185 (1995) (holding "[t]here is no

3. Pursuant to W. Va.Code § 57–3–3 (1923) (Repl. Vol.2005),

In criminal cases husband and wife shall be allowed, and, subject to the rules of evidence governing other witnesses, may be compelled to testify in behalf of each other, but *neither shall be compelled, nor, without the consent of the other, allowed to be called as a witness against the other* except in the case of a prose-

cution for an offense committed by one against the other, or against the child, father, mother, sister or brother of either of them. The failure of either husband or wife to testify, however, shall create no presumption against the accused, nor be the subject of any comment before the court or jury by anyone. (Emphasis added).

absolute right under either the West Virginia or the United States Constitutions to plea bargain. Therefore, a circuit court does not have to accept every constitutionally valid guilty plea merely because a defendant wishes so to plead."). Further, "[i]f a plea agreement has been reached by the parties .... the court may accept or reject the agreement[.]" W. Va. R.Crim.P. 11(e)(2). In light of the foregoing, we have expressly held that " 'West Virginia Rules of Criminal Procedure, Rule 11, gives a trial court discretion to refuse a plea bargain.' Syllabus Point 5, *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984)." Syl. pt. 2, *Myers v. Frazier*, 173 W.Va. 658, 319 S.E.2d 782 (1984). Thus, even assuming that a plea agreement had been reached, the circuit court was under no obligation to accept the agreement.

■ Moreover, it is significant that the offer of a grant of immunity was never presented to the trial court for its determination as to its appropriateness. The applicable statute states:

In any criminal proceeding no person shall be excused from testifying or from producing documentary or other evidence upon the ground that such testimony or evidence may criminate or tend to criminate him, if the *court* in which he is examined is of the opinion that the ends of justice may be promoted by compelling such testimony or evidence. And if, but for this section, the person would have been excused from so testifying or from producing such evidence, then if the person is so compelled to testify or produce other evidence and if such testimony or evidence is self-criminating, such self-criminating testimony or evidence shall not be used or receivable in evidence against him in any proceeding against him thereafter taking place other than a prosecution for perjury in the giving of such evidence, and the person so compelled to testify or furnish evidence shall not be prosecuted for the offense in regard to which he is so compelled to testify or furnish evidence, and he shall have complete legal immunity in regard thereto.

W. Va.Code § 57–5–2 (1923) (Repl.Vol.2005) (Emphasis added). We have previously held that " '[m]ost courts have held that in the absence of some express constitutional or statutory provision, a prosecutor has no inherent authority to grant immunity against prosecution.' Syllabus Point 16, *Myers v. Frazier*, 173 W.Va. 658, 319 S.E.2d 782 (1984)." Syl. pt. 6, *State v. Miller*, 178 W.Va. 618, 363 S.E.2d 504 (1987). The State proffered that it intended to ask the trial court to grant immunity to Mrs. Gibson if she plead the 5th Amendment and then testified. However, because her testimony was not needed, permission for immunity was neither sought nor granted. The trial court had no responsibility to enforce a conditional offer of immunity that was never brought to fruition.

■ Mrs. Gibson argues, however, that she relied on the agreement to her detriment and that she cannot be placed in a similar position as she was prior to the negotiations. In a prior decision of this Court, it was found that the alleged plea negotiations constituted more of a discussion as opposed to an actual agreement. *See State v. Wayne*, 162 W.Va. 41, 245 S.E.2d 838 (1978), *overruled on other grounds by State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983). In the *Wayne* decision, we observed that

[w]hile we recognize a plea bargain agreement may be specifically enforced in some instances,..., that remedy is not available unless the party seeking specific performance demonstrates he has relied on the agreement to his detriment and cannot be restored to the position he held before the agreement. However, mere negotiation cannot be transformed into a consummated agreement merely by an exercise of the defendant's imagination. While we do not require that a plea bargain agreement be written, although that is the far better course, we do require substantial evidence that the bargain was, in fact, a consummated agreement, and not merely a discussion. Court approval, whether formal or informal is advised.

*Id.*, 162 W.Va. at 42–43, 245 S.E.2d at 840–41 (internal citations and footnotes omitted). In *Wayne*, this Court found that no agreement had been reached because "[n]o written bar-

gain appears in the record; the terms of the alleged agreement are not developed; the defendant has given no evidence of reliance; and, the defendant has not shown that his position was irrevocably altered." *Id.* 162 W.Va. at 43, 245 S.E.2d at 841. To that end, this Court held as follows: "[s]pecific performance of a plea bargain is an available remedy only when the party seeking it demonstrates that he has relied on the agreement to his detriment and cannot be restored to the position he held before the agreement." Syl. pt. 1, *id.*

In the present case before this Court, Mrs. Gibson asserts that she relied on the agreement to her detriment and that it is impossible to restore her to the position she held prior to any plea discussions. We disagree. Without testifying at trial, Mrs. Gibson had no reason to expect enforcement of any alleged plea agreement because she was unable to perform her end of the deal. While she claims that her presence at trial is what forced her husband to enter into a plea agreement, such a claim is unfounded. It was always within Mr. Gibson's right to assert his spousal privilege and prevent his wife from testifying. Thus, her presence at trial could not have forced him to plead when he could have prevented her testimony if he wished.

Also, Mrs. Gibson claims that she cannot be returned to the same position she was prior to the alleged offer of immunity because of statements made to the prosecution. However, this is not true because she never implicated herself as a result of her statements. Her statements to the police after she was arrested, as well as her statements to the prosecutor during plea negotiations, only implicated her husband. In both cases, she provided herself an alibi defense. Even if she had incriminated herself during discussions with opposing counsel, the circuit court already ruled to exclude any evidence gleaned as a result of the plea negotiations.

Therefore, Mrs. Gibson can be fully returned to the position she held prior to plea discussions. The circuit court's refusal to enforce the alleged plea agreement should be upheld, and Mrs. Gibson should be allowed to proceed to trial.

## IV.

### CONCLUSION

For the foregoing reasons, we affirm the circuit court's decision to refuse the plea agreement. Accordingly, the writ of prohibition is denied.

Writ Denied.

ALBRIGHT, Justice, concurring.

While I agree with the result reached by the majority on the facts of this case, I write separately to emphasize several points. This case highlights the need for defense attorneys to have their clients, whenever possible, enter into a written plea agreement and to promptly seek the approval of the trial court as to the terms of the agreement. While plea agreements do not need to be in writing to be enforced,[1] by reducing the terms of the agreement to writing the potential for eventual disagreement over the terms of the agreement is greatly reduced. And, while there is no guarantee that the trial court is going to approve a specific plea agreement, the Appellant in this case clearly would have been in a better position had there been an actual written plea agreement.

The trial court fully appreciated the fact that the State had likely benefitted by entering into plea negotiations with the Appellant.[2] And the trial court was careful not to allow the State to benefit from what it referred to as a "tainted" process. By this, the trial court was referring to the probable correlation between the discussions the State had with Appellant which culminated in her agreement to testify against her husband and

---

1. *See State v. Wayne,* 162 W.Va. 41, 42, 245 S.E.2d 838, 840 (1978), *overruled on other grounds by State v. Kopa,* 173 W.Va. 43, 311 S.E.2d 412 (1983) (recognizing that written plea agreements are preferred where possible).

2. In explanation of its decision to deny the State the right to use any information obtained from Appellant during their negotiations, the trial court stated: "I can't allow the State to make an agreement and then say that it didn't exist and use the fruits that they have garnered during the agreement."

likely played a pivotal role in her husband's decision to enter into a plea agreement. That the trial court had serious concerns about the way things evolved in this case is evidenced by his statement, which appears on the record twice: "I will not be a party to a mockery of our judicial process."

Intuitively, the trial court recognized that Appellant's husband's entry of a plea agreement was prompted, if not compelled, in some fashion by Appellant's willingness to testify against her husband at trial. With the entry of Appellant's husband's plea agreement, the need for Appellant to testify against him was removed. The obliteration of the need for Appellant to testify, however, should not correspondingly rob Appellant of a benefit from the bargain that was purportedly struck with the State. To do so strikes me as wholly inequitable. Allowing the State to benefit from its negotiations with Appellant, while denying Appellant any correlative benefit when the plea agreement arguably resulted as a direct result of her efforts simply seems unjust.

Assuming that the evidence supported the trial court's intuitive recognition that the State benefitted from the inchoate agreement of Appellant to testify, I would have had to dissent from the majority's ruling in this case [3] had the agreement between the State and Appellant been reduced to writing and approved by the trial court. However, based on the absence of a written plea agreement in this case that was approved by the trial court, I cannot disagree with the result reached by the majority. Accordingly, I respectfully concur.

STARCHER, J., concurring in part, dissenting in part.

I concur with the majority that a writ of prohibition should be denied in this case, although I do so for different reasons than those stated in the majority opinion.

It is clear that the procedures for executing a plea agreement, as set forth in *W.V.R.Cr.P.* Rule 11(e), were not followed by either the prosecutor or counsel for the defendant. However, verbal agreements can

be and are enforceable in appropriate circumstances. *State v. Kopa,* 173 W.Va. 43, 311 S.E.2d 412 (1983). But the perils of verbal agreements are clearly illustrated in this case—including uncertainty and a tainted judicial process.

In the present case, both the prosecutor and defense counsel admit that *an agreement* was reached. It is also clear that the agreement included a requirement that the petitioner cooperate and provide assistance to the state in the prosecution of the petitioner's co-defendant/husband. In exchange for cooperation and assistance, the petitioner was to be given "immunity." Therefore, converse to the reasoning and discussion set forth in the majority opinion, the issue is not whether an enforceable agreement was reached, or whether it required cooperation, or even whether it required the granting of immunity. Instead, the issue—the dispute— is the scope and extent of the immunity to be given the petitioner. The petitioner argues that in exchange for her cooperation, she was to be granted full immunity and the charges against her were to be dismissed. The state maintains that it offered only limited use immunity, and never agreed to dismiss the charges against the petitioner.

The state does not dispute that the petitioner, in accord with her agreement, cooperated and did everything that was asked of her. Petitioner's cooperation included being debriefed by the prosecutor and law enforcement, giving a statement that incriminated her co-defendant, and appearing daily at the courthouse during co-defendant's trial, as requested by the state, to testify if called upon. Petitioner's testimony was ultimately not required because the co-defendant reached a plea agreement with the state prior to the conclusion of his trial, thus obviating the need for petitioner's testimony.

This is not an uncommon outcome of cases involving two or more defendants where one defendant agrees to cooperate with the state. In fact, it often is a prosecutor's hoped-for outcome that a non-cooperating defendant— faced with the knowledge that a co-defendant is prepared to offer evidence against him—

3. Assuming, of course, that the majority's ruling   would remain the same.

will decide to enter into a plea agreement and end the case. Therefore, the cooperation of a co-defendant is a clear benefit to the state and not speculative as the majority opinion concludes.

Nonetheless, I concur with the results in this case because I believe it is clear *from the record* that the agreement actually offered never required dismissal of the charges against the petitioner. But I also believe, *based on common sense*, that both petitioner and her counsel were genuine in their belief that dismissal of the charges against the petitioner was a part of the agreement. I believe this because I see no reason or benefit to the petitioner from the agreement, absent a belief by her that she would benefit from it. As the agreement actually stands, the petitioner waived her fundamental right not to cooperate with the state, gave a damning statement against her spouse, and was to testify against him at his trial, if called. She was to do this for a benefit to her of what— use immunity only? Where is the benefit to the petitioner in this agreement? I see none, nor can I envision any seasoned criminal defense attorney recommending such an agreement.

While I concur with the outcome, I strongly dissent to the reasoning stated in the majority opinion. The majority opinion concludes, in part, that "[w]ithout testifying at trial, [petitioner] had no reason to expect enforcement of any alleged plea agreement because she was unable to perform her end of the deal." This reasoning is problematic for two reasons.

First, the majority opinion's conclusion that "... [petitioner] was unable to perform her end of the deal" is completely unsubstantiated. An agreement between the state and the petitioner was reached. That agreement required the petitioner to perform by: (a) being debriefed by the state, (b) showing up at all required court appearances, and (c) testifying against her co-defendant if she was called upon by the state.

We know from the record in this case that the petitioner was debriefed, that she did show up at the courthouse daily during her co-defendant's trial, and that the state *did not* call her to testify because her testimony ultimately became unnecessary when the co-defendant reached his own plea agreement during the trial and pled guilty. The conclusion in the majority opinion that the "... [petitioner] was unable to perform her end of the deal" is not factually accurate. That the petitioner's testimony was not needed does not mean petitioner was not able to and did not perform, as the majority concludes. The petitioner *did* "perform" by doing all that was required and asked of her.

The second, and even more troubling, aspect of the majority opinion is the conclusion that because the petitioner had not fully performed the agreement, she "had no reason to expect enforcement." I am concerned that this language may be construed by prosecutors, in instances when a defendant's cooperation is no longer needed by the state, as a green light to renege on agreements when a defendant has done all that was asked of them.

I also strongly disagree that the state can be relieved of a plea agreement under facts and circumstances found in this case. I believe that the majority opinion's language is too broad, and the majority has—at a minimum—created uncertainty in the enforceability of plea agreements, and done so in a manner completely unnecessary to decide this case. It will be obvious to the defense bar that they must now anticipate that a door has been opened for prosecutors to withdraw from plea agreements in situations such as those presented by this case. To avoid a similar result, the defense bar should hereafter require the inclusion of language in a plea agreement that anticipates such situations.

Finally, I also want to discuss another aspect of this case, one that was not fully vetted in the majority opinion. It is that the state's negotiations in this case may have tainted the judicial process. I say this because the agreement in this case resulted in a defendant waiving fundamental rights while receiving absolutely no benefit for herself. On the other hand, the state benefitted from the agreement. Had *W.V.R.Cr.P.* Rule 11(e) been properly followed and the agreement brought before the court for review, uncer-

tainty of the terms within the agreement likely would have been discovered.

Unfortunately, in this case the petitioner received nothing from the state in exchange for having waived her fundamental rights, and there is little relief that we can give her for having waived those rights. This is troubling.

The record reflects that the trial judge *also* was troubled by the state's negotiations with the petitioner. The trial judge said:

In this case negotiations with the State have tainted the process. I will not enforce the plea bargain agreement and turn your client loose, but I will not be a party to a mockery of our judicial process. I am the keeper of justice. . . . [1]

I agree with the trial judge that the state's negotiations with the petitioner and her counsel have tainted the process. I also believe that the results of negotiations are still likely to infringe upon the petitioner's ability to receive a fair trial. While the trial judge has prohibited the prosecutor from using any information obtained in debriefing the petitioner, neither the prosecutor, his investigators or law enforcement officers involved in the case, can unlearn or unhear that which was learned or heard *only* as a result of the agreement reached with the petitioner. Nor can the state give back to the petitioner the benefit it realized from her cooperation—having a more clear picture of the events that occurred and the influence of her cooperation on the decision of petitioner's co-defendant to execute a plea agreement of his own, and then plead guilty.

Accordingly, while I concur with the result of this case, I dissent to the reasons assigned by the majority in its opinion.

---

**1.** The trial judge denied the state the right to use any information obtained as a result of the negotiations against the petitioner. He said, "I can't allow the State to make an agreement and then say that it didn't exist and use the fruits that they have garnered during the agreement."