741 S.E.2d 118

**STATE of West Virginia ex rel. Jennifer A. FILLINGER, R.N., Petitioner**

v.

**Laura S. RHODES, Executive Director, The West Virginia Board of Examiners for Registered Professional Nurses, an Administrative Agency of the State of West Virginia, Respondent.**

No. 12–1055.

Supreme Court of Appeals of West Virginia.

Submitted March 5, 2013.

Decided March 12, 2013.

James D. McQueen, Jr., Esq., Amanda J. Davis, Esq., McQueen Davis, PLLC, Huntington, WV, for Petitioner.

Patrick Morrisey, Esq., Attorney General, Gregory G. Skinner, Esq., Senior Assistant Attorney General, Charleston, WV, for Respondent.

KETCHUM, Justice:

This original proceeding in prohibition is before this Court upon the petition of Jennifer A. Fillinger, R.N., ("petitioner") asking this Court to direct the West Virginia Board of Examiners for Registered Professional Nurses ("Board") to dismiss, with prejudice, two complaints accusing her of misconduct. The Board initiated an administrative process upon the complaints which could result in the revocation or suspension of the petitioner's license to practice registered professional nursing. Although the complaints were filed in 2008 and 2009, and the petitioner demanded a hearing, no hearing on the complaints has been conducted by the Board.

Upon review of the petition, the response, all exhibits and the argument of counsel, this Court is of the opinion that the Board exceeded its jurisdiction in failing to conduct an administrative hearing on the 2008 and 2009 complaints. As discussed below, the Board's failure in that regard was in violation of State statutory and rule provisions. Accordingly, the petitioner's request for relief in prohibition is granted, and the complaints are dismissed with prejudice.

In so holding, we note that the parties have recently informed this Court of

a possible settlement of the complaints against the petitioner. Nevertheless, the issues raised herein concerning the procedures required in contested cases before the Board are quite likely to arise in the future on a continuing basis. This Court deems those issues to be of special importance to the public and the bar. As a result, judicial guidance is warranted, and we will address the issues in the context of the current litigation. Syllabus point 1 of *State ex rel. M.C.H. v. Kinder*, 173 W.Va. 387, 317 S.E.2d 150 (1984), observes:

> A case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review.

*See*, syl. pt. 4, *Hart v. National Collegiate Athletic Association*, 209 W.Va. 543, 550 S.E.2d 79 (2001) (A college athlete's eligibility to compete, rendered moot by his graduation, was, nevertheless, addressed by this Court where issues of public importance were involved and were likely to arise again.); syl. pt. 2, *State ex rel. Jeanette H. v. Pancake*, 207 W.Va. 154, 529 S.E.2d 865 (2000) (The issue of an incarcerated parent's attendance at a hearing concerning the termination of parental rights was addressed by this Court, even though the parent was released from custody during pendency of Supreme Court proceedings.).

## I.

### Factual and Procedural Background

The practice of registered professional nursing is regulated by the State of West Virginia, generally, through *W.Va.Code*, 30-1-1 [1996] *et seq.*, which sets out provisions relating to various professions and occupations, and, specifically, through *W.Va.Code*, 30-7-1 [2012] *et seq.*, which sets out the

authority of the Board of Examiners for Registered Professional Nurses. In addition, the practice of registered professional nursing is regulated through Title 19 of the *West Virginia Code of State Rules*, i.e., *W.Va.C.S.R.* § 19-1-1 (2009) *et seq.*

In the current matter, the petitioner, a graduate of Southern West Virginia Community and Technical College, obtained a license as a registered professional nurse in 2005 and began working as a R.N. at Charleston Area Medical Center, Memorial Division, in Charleston, West Virginia.

On March 17, 2008, the petitioner was terminated from her employment at Charleston Area Medical Center based on data collected from a machine, known as Accu-Dose, designed to dispense medicine for hospital patients. The data indicated that the use of the petitioner's pass code to access the machine did not correlate with patient records or drug inventories. The petitioner's employer at Charleston Area Medical Center concluded that the petitioner had unlawfully obtained prescription narcotics for personal use or distribution to others. On March 24, 2008, Charleston Area Medical Center filed a complaint against the petitioner in that regard with the Board.

Soon after, the Board sent a letter to the petitioner stating that the allegations, if proven, would constitute a violation of *W.Va. Code*, 30-7-11 [1965]. That statute provides that the Board shall have the power to revoke or suspend a license to practice registered professional nursing upon proof that the licensee is unfit or incompetent "by reason of negligence, habits or other causes," or is guilty of conduct "derogatory to the morals or standing of the profession of registered nursing."[1] In response, the petitioner, represented by counsel, denied any improper acquisition of drugs and demanded a hearing before the Board.[2]

---

1. In addition to *W.Va.Code*, 30-7-11 [1965], the power of the Board of Examiners for Registered Professional Nurses to conduct disciplinary hearings is recognized in *W.Va.Code*, 30-7-4(g) [1965], as well as in Title 19 of the *West Virginia Code of State Rules*. *See also*, *W.Va.Code*, 30-1-8(e) [2005] (No license may be revoked or suspended without a prior administrative hearing.).

2. Following a hearing and decision by the Board, circuit court review and appeal to this Court are permitted under *W.Va.Code*, 30-1-8 [2005], and *W.Va.Code*, 30-1-9 [1931]. The provisions for appeal in the latter statute are referred to in *W.Va.C.S.R.* § 19-5-11.1 (1993).

On September 22, 2008, the Board provided a status report to Charleston Area Medical Center concerning the complaint filed against the petitioner. The report stated that the complaint was being "investigated and reviewed by Board staff."

In October 2008, the petitioner began employment as a R.N. with the Logan Regional Medical Center in Logan, West Virginia. Thereafter, on September 21, 2009, the petitioner's employment was terminated based on data collected from a machine, known as Med–Select, used to dispense medicine for the Center's patients. The data indicated that the petitioner's name and password, used to access the machine, did not correlate with patient records or drug inventories. Moreover, according to the Center, a medication known as Versed was found in the petitioner's assigned locker at the time of her termination.

On September 22, 2009, Logan Regional Medical Center filed a complaint with the Board suggesting that the petitioner had unlawfully obtained prescription narcotics for personal use or distribution to others. As before, the Board sent a letter advising the petitioner that the allegations, if proven, would constitute a violation of *W.Va.Code*, 30–7–11 [1965], and could result in the revocation or suspension of her license to practice registered professional nursing.

The Board proposed a consent agreement in January 2011 to resolve the two complaints. The petitioner rejected the proposed agreement.[3] An administrative hearing was then scheduled for July 26, 2011.

The day before the July 26, 2011, hearing, the petitioner's counsel received a facsimile transmission from the Board, confirming a verbal communication from the Board late that afternoon, stating that the hearing had been continued. As confirmed by the Board

in its response to the petition filed in this Court, no reason for the continuance was provided to petitioner's counsel.

The hearing was rescheduled for September 8, 2011. Prior thereto, the petitioner requested from the Board: (1) the name of the assigned hearing examiner, (2) the names of witnesses the Board intended to call and (3) any documents, not already provided, that the Board intended to submit. No response to the request was received. The day before the September 8, 2011, hearing, a facsimile transmission was sent to the petitioner's counsel from the Board stating that, pursuant to a telephone call made to petitioner's counsel that morning, the hearing was continued. According to the transmission, the Board, that morning, received a number of records from Charleston Area Medical Center reflecting improper conduct by the petitioner, thus warranting a modification of the accusations. According to the petitioner, although the facsimile transmission further stated that copies of the records would be provided, the Board gave no explanation why the records had not been previously obtained or provided to the petitioner in the years preceding the scheduled hearing.

The hearing was then tentatively scheduled for October 25, 2011. However, in late September 2011, the petitioner's counsel was informed by the Board that the Board's counsel would not be available at that time.

The hearing before the Board was subsequently scheduled for November 1, 2011. The petition filed in this Court alleges that, on the day before the hearing, the petitioner's counsel received a call from an employee of the Board advising that the hearing was continued. In response, the Board states that its counsel suffered a medical emergency in late October 2011, resulting in a medical leave of absence until mid-February 2012. According to the petitioner, however, no ex-

---

**2.** Denying any wrongdoing, the petitioner alleged that she had no information with regard to the inter-workings of the Accu–Dose machine in terms of its maintenance or the replacement of its inventory. Moreover, she alleged that she would produce polygraph and drug screen evidence to prove her innocence.

**3.** The Board is empowered to enter into a consent agreement, or other informal disposition of a contested case, pursuant to *W.Va.Code*, 30–1–8(g) [2005]. However, *W.Va.C.S.R.* § 19–9–3.12 (2004), provides: "If the licensee contests the allegations and refuses to enter into a consent agreement, Board staff shall set the case for hearing."

planation was given, at the time, why the November 1 hearing was continued.

Subsequently, the petitioner's counsel sent the Board a motion to dismiss the complaints, alleging, *inter alia*, that the Board's continuances of the scheduled hearings were contrary to law, had deprived the petitioner of substantial resources and had improperly delayed the entry of a final administrative decision. Although no response or decision concerning the motion was entered by the Board, the administrative hearing was rescheduled for May 22, 2012. The petitioner and the Board agreed to stay the May 22 hearing to permit the petitioner to seek relief in prohibition.

Invoking this Court's original jurisdiction, the petitioner filed a petition for a writ of prohibition asking this Court to direct the Board of Examiners for Registered Professional Nurses to dismiss, with prejudice, the 2008 and 2009 complaints.[4]

## II.

### Standards of Review

This Court has original jurisdiction in prohibition proceedings pursuant to Art. VIII, § 3, of The Constitution of West Virginia. That jurisdiction is recognized in Rule 16 of the Rules of Appellate Procedure of this Court and in various statutory provisions. *W.Va.Code*, 51–1–3 [1923]; *W.Va.Code*, 53–1–2 [1933]. In considering whether to grant relief in prohibition, this Court stated in the syllabus point of *Vineyard v. O'Brien*, 100 W.Va. 163, 130 S.E. 111 (1925), as follows: "The writ of prohibition will issue only in clear cases where the inferior tribunal is proceeding without, or in excess of, jurisdiction." Syl. pt. 1, *State ex rel. Johnson v. Reed*, 219 W.Va. 289, 633 S.E.2d 234 (2006).

In the current matter, which concerns whether the Board exceeded its jurisdiction, the relevant guidelines are found in *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483

S.E.2d 12 (1996), syllabus point 4 of which holds:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 2, *State ex rel. West Virginia National Auto Insurance Company v. Bedell*, 223 W.Va. 222, 672 S.E.2d 358 (2008); syl. pt. 2, *State ex rel. Isferding v. Canady*, 199 W.Va. 209, 483 S.E.2d 555 (1997).

Of course, as an extraordinary remedy invoking the original jurisdiction of this Court, a petition for a writ of prohibition may not be used as a substitute for an appeal. Syl. pt. 1, *State ex rel. Gibson v. Hrko*, 220 W.Va. 574, 648 S.E.2d 338 (2007). As early as 1873, this Court stated that "a mere error in the proceeding may be ground of appeal or review, but not of prohibition." Syl. pt. 3, in part, *Buskirk v. Judge of Circuit Court*, 7 W.Va. 91 (1873).

---

**4.** It should be noted that the exhibits before this Court indicate that the Board has not sought to provisionally revoke or suspend the petitioner's license pending the ultimate disposition of the two complaints. *See, W.Va.Code*, 30–1–5(e) [2005], and *W.Va.Code*, 30–7–14 [1965], permit-

ting the Board to seek injunctive relief where a licensee has engaged in, is engaging in, or is about to engage in violations relating to the profession. *See also, W.Va.C.S.R.* § 19–1–4.2.c (2004) (Proceedings may be instituted by the Board to enjoin violations.).

## III.

### Discussion

The Board first emphasizes that the statutory regulation of registered professional nursing through *W.Va.Code*, 30–1–1 [1996] *et seq.*, concerning professions and occupations, and, *W.Va.Code*, 30–7–1 [2012] *et seq.*, setting out the authority of the Board, demonstrates that the practice of registered professional nursing is a privilege subject to disciplinary action. The Board's position in that regard is supported by the declaration found in *W.Va.Code*, 30–1–1a [1996], which states:

The Legislature hereby finds and declares that as a matter of public policy the practice of the professions referred to in this chapter is a privilege and is not a natural right of individuals. The fundamental purpose of licensure and registration is to protect the public, and any license, registration, certificate or other authorization to practice issued pursuant to this chapter is a revocable privilege.

Fundamentally, however, the power to revoke or discipline is not without limitation. Referring to *W.Va.Code*, 30–1–1a [1996], this Court recognized in *Webb v. West Virginia Board of Medicine*, 212 W.Va. 149, 155 n. 6, 569 S.E.2d 225, 231 n. 6 (2002), that a practitioner, nevertheless, has a right to fair treatment in disciplinary proceedings before a licensing board and a right to judicial review. *See*, Emile F. Short, Annotation, *Revocation of Nurse's License to Practice Profession*, 55 A.L.R.3d 1141 (1974) (Indicating that, while the state has an inherent duty to preserve and protect the public health through the regulation of medical professionals, including nurses, it is essential that a licensee faced with revocation be afforded reasonable opportunity to appear before the administrative tribunal and make a defense.). *See also*, 47 W.Va. Op. Atty. Gen. 60, 61, 62 (September 24, 1956) (The West Virginia Legislature has recognized that the revocation of a professional license is a serious matter, and, therefore, the Board of Examiners "must conduct a hearing in order to revoke a license of a registered nurse.").

Here, the petitioner asserts that the Board has effectively denied her an administrative hearing by unilaterally continuing every scheduled hearing since the 2008 and 2009 complaints were filed. In particular, the petitioner relies on *W.Va.Code*, 30–1–5(c) [2005], which provides:

Every board referred to in this chapter has a duty to investigate and resolve complaints which it receives and shall, within six months of the complaint being filed, send a status report to the party filing the complaint by certified mail with a signed return receipt and within one year of the status report's return receipt date issue a final ruling, unless the party filing the complaint and the board agree in writing to extend the time for the final ruling.

According to the petitioner, *W.Va.Code*, 30–1–5(c) [2005], was violated by the Board in two respects. First, the September 22, 2008, status report sent to Charleston Area Medical Center, stating that its complaint was under investigation and review, was the only status report ever sent by the Board, *i.e.*, no follow-up reports were provided to Charleston Area Medical Center and no status reports at all were sent to Logan Regional Medical Center. Second, at no time did either Charleston Area Medical Center or Logan Regional Medical Center agree in writing to extend the time for a final ruling on the complaints. Thus, the petitioner maintains:

Respondent administrative agency has failed or refused to comply with the requirements of West Virginia Code § 30–1–5(c) by specifically failing to send a status report by certified mail return receipt requested to the complainants, by failing to obtain the consent of the complainants to extend disposition of the complaints against petitioner, and by failing to schedule, notice, or hold a dispositive hearing and render a decision in this matter within the time limits prescribed in said statute.

Further delineation of the role of the Board in such matters is found in the contested case hearing procedure set forth in Title 19, Series 5, of the *West Virginia Code of State Rules*, *W.Va.C.S.R.* § 19–5–1 (1993) *et seq.* Under that procedure, the licensee, also designated as the "charged party," is entitled to a hearing which may be conducted

by one or more Board members or by a hearing examiner appointed by the Board. *W.Va.C.S.R.* § 19–5–3.10.10 (1993). Moreover, *W.Va.C.S.R.* § 19–5–3.10.19 (1993), provides: "Hearings held by the Board as a result of charges instituted against a licensee may be continued or adjourned to a later date or a different place by the Board or its designee by appropriate notice to all parties."[5] The contested case hearing procedure in Series 5 also provides for pre-hearing conferences and a post-hearing final order containing findings of fact and conclusions of law. *W.Va.C.S.R.* § 19–5–3.10.21 (1993); *W.Va.C.S.R.* § 19–5–10.1 (1993).

■ Accordingly, in adjudicating a contested case concerning the revocation or suspension of a nurse's license to practice registered professional nursing, the West Virginia Board of Examiners for Registered Professional Nurses must follow the procedural requirements set forth in Chapter 30 of the *West Virginia Code,* as well as the contested case hearing procedure set forth in Title 19, Series 5, of the *West Virginia Code of State Rules.*

Emphasizing the administrative hearing and review procedure, the Board asserts that, inasmuch as it has yet to conduct the hearing and enter a final decision, the petitioner has failed to exhaust her administrative remedies, and, therefore, extraordinary relief in the form of prohibition is unwarranted. That assertion is difficult to sustain, however, where the administrative remedy, delayed over an unreasonable period of time, becomes largely theoretical. The latter point is illustrated in a striking way in *State ex rel. Sheppe v. West Virginia Board of Dental Examiners,* 147 W.Va. 473, 128 S.E.2d 620 (1962).

■ In *Sheppe,* a dentist filed a petition for a writ of mandamus asking this Court to direct the West Virginia Board of Dental Examiners to permit him to take an examination in the specialty of orthodontics. For at least a year and a half, the Board failed to take definite action either refusing or allowing the dentist to take the exam, insisting, for example, that his application needed additional information, required an advisory legal opinion and required further, internal review. Concluding that the dentist, under the circumstances, did not have an adequate, alternative remedy, this Court awarded relief in mandamus, thereby directing that the examination be provided. The opinion in *Sheppe* described the breakdown in the administrative process as follows:

> Although from the facts and circumstances of this case we can assume that the Board has refused to grant relator's application to take an examination, no hearing was held and no decision made from which to apply for review to the Circuit Court of Cabell County[.]

147 W.Va. at 481–82, 128 S.E.2d at 625. Thus, syllabus point 2 of *Sheppe* holds:

> In the absence of a specific time limit, the failure of a state board or agency to take decisive action within a reasonable time, upon a matter properly before it, will be assumed to be a refusal of the action sought.

■ In the matter now to be determined, the two complaints were filed in 2008 and 2009. From that time forward, no status reports were sent by the Board to either Charleston Area Medical Center or Logan Regional Medical Center, with the exception of the September 22, 2008, report sent to Charleston Area Medical Center. Moreover, the Board repeatedly continued the scheduled hearings without written agreements

---

**5.** Where a continuance is sought by motion, *W.Va.C.S.R.* § 19–5–3.10.20 (1993), states:

> Motions for a continuance of a hearing may be granted upon a showing of good cause. Motions for continuance must be in writing and received in the office of the Board no later than seven (7) days before the hearing date. In determining whether good cause exists, consideration will be given to the ability of the party requesting the continuance to proceed effectively without a continuance. A motion

for a continuance filed less than seven (7) days from the date of hearing shall be denied unless the reason for the motion could not have been ascertained earlier. Motions for continuance filed prior to the date of hearing shall be ruled on by the Executive Secretary or Assistant Executive Secretary of the Board. All other motions for continuance shall be ruled on by the Board member(s) or the hearing examiner presiding over the hearing.

between the Board and either of the complaining parties to extend the time for the Board's final ruling. This Court has no reason to conclude that the Legislature meant less than what it said in *W.Va.Code,* 30–1–5(c) [2005], about those requirements, and the Board's violation thereof is clearly demonstrated in the record before this Court.

Adding significantly to those requirements, *W.Va.C.S.R.* § 19–5–3.10.19 (1993), provides: "Hearings held by the Board as a result of charges instituted against a licensee may be continued or adjourned to a later date or a different place by the Board or its designee *by appropriate notice to all parties.*" (emphasis added) Here, the day before each of the scheduled hearings of July 26, 2011, September 8, 2011, and November 1, 2011, the petitioner received late calls and facsimile transmissions from the Board stating that the hearing was continued. Reasons for the continuances were not given or adequately explained. For example, although the Board asserted the last minute receipt of additional medical records prior to the scheduled September 8, 2011, hearing, the petitioner points out that the Board provided no explanation why the records had not been previously obtained over a period of years.

As stated above, the petitioner requested: (1) the name of the assigned hearing examiner, (2) the names of witnesses the Board intended to call at the hearing, and (3) any documents, not already provided, that the Board intended to submit. No response by the Board to the request was received.

## IV.

## Conclusion

Comparable to the circumstances in *Sheppe,* the Board of Examiners for Registered Professional Nurses has failed to take definite action to conduct a hearing and enter a final decision on the 2008 and 2009 complaints. The petitioner, denying any wrongdoing concerning the accusations,[6] engaged in no conduct which impeded the administrative process. Nevertheless, the Board has

effectively denied the petitioner an opportunity to be heard in opposition to the allegations against her. Accordingly, obedience to the relevant statutes and rules requires that relief in prohibition be granted. *See, State ex rel. Gordon Memorial Hospital v. West Virginia State Board of Examiners for Registered Nurses,* 136 W.Va. 88, 101, 66 S.E.2d 1, 9 (1951) (Quasi-judicial actions of the Board of Examiners for Registered Nurses taken without, or in excess of, the Board's jurisdiction are subject to proceedings in prohibition.)

The Board having acted in excess of its jurisdiction, the petitioner's request for relief in prohibition is granted, and the complaints filed against her in 2008 and 2009 are dismissed, with prejudice.

**Writ Granted.**

Chief Justice BENJAMIN and Justice LOUGHRY, concur and reserve the right to file concurring Opinions.

BENJAMIN, Chief Justice, concurring:

I agree with the Majority's decision to grant the requested writ of prohibition. I write separately only to emphasize that by repeatedly violating the West Virginia Code, the West Virginia Code of State Rules, and Ms. Fillinger's due process rights, the West Virginia Board of Examiners for Registered Professional Nurses engaged in excessively vexatious conduct. In past cases, such conduct has warranted awarding attorney fees and costs to the harmed party. *See, e.g., Miller v. Hare,* 227 W.Va. 337, 342, 708 S.E.2d 531, 536 (2011) ("[T]his Court determined that the DMV had improperly delayed the revocation proceeding and ... that the appropriate sanction for the improper continuance was to require the DMV to pay the substantial expenses and costs incurred by [the petitioner] in connection with the DMV's improper delay."); *Trozzi v. Bd. of Review of W. Va. Bureau of Emp't Programs,* 214 W.Va. 604, 607, 591 S.E.2d 162, 165 (2003) ("[T]his Court recognized that " '[t]here is authority in equity to award to the prevailing

---

**6.** The petitioner denies the validity of the complaints and insists that she has never been investigated or accused by any law enforcement agen-

cy of wrongdoing and has never been treated by any medical provider or counselor for improper use of drugs.

litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " [*Bd. of Review of Bureau of Emp't Programs v.*] *Gatson,* 210 W.Va. [753,] 755, 559 S.E.2d [899,] 901 (quoting Syl. pt. 3, *Sally–Mike Properties v. Yokum,* 179 W.Va. 48, 365 S.E.2d 246 (1986)).").  In the future, I believe this Court should pay special attention to such conduct and make such awards of costs and expenses as appropriate to compensate the victims of such conduct and to communicate the message that this Court expects all parties to abide by the Code and by applicable rules.

LOUGHRY, Justice, concurring:

I concur with the majority in granting the petitioner's request for relief in prohibition given the Board's unconscionable conduct in allowing this matter to linger for nearly five years without any good cause shown.  Due process and fundamental fairness clearly dictate that a nursing professional subject to the disciplinary authority of its licensing board be afforded a fair and prompt hearing in cases such as the one presently at issue.

However, I write separately to highlight the alarming allegations in the underlying complaints, which, in light of the Board's failure to adhere to statutory procedural requirements, will never be resolved on their merits.  The first complaint against the petitioner, filed by Charleston Area Medical Center ("CAMC"), alleged that she improperly removed Lortab, Ambien, and Xanax from the hospital's Accu-dose machine.  It was further alleged that throughout a three-month period, these "medications were taken out four (4) at a time within minutes and hours on the same patient" under the petitioner's name.  In filing its complaint, CAMC concluded that the petitioner had unlawfully obtained prescription narcotics for personal use or distribution to others.

After the petitioner was terminated by CAMC, she found employment at Logan Regional Medical Center.  The petitioner was terminated less than one year later after Logan Regional Medical Center filed a complaint with the Board suggesting that (once again) the petitioner had unlawfully obtained prescription narcotics for personal use or distribution to others.  In its complaint filed with the Board, Logan Regional Medical Center alleged that medications were removed from the Med–Select machine in the hospital's emergency room under the petitioner's name and password even though "[t]here was no order or documentation of medications given to patients."  It was specifically alleged that "for a 31 day cycle, 280 Hydrocodone Lorcet/Lortab 10 mg tablets were taken from the Med–Select under [the petitioner's] name and identification, approximately 260 more than other staff [and that] Versed [a sedative] was found in [her] locker."

The record before us indicates that the petitioner has admitted that she acted "negligently" at two separate hospitals in two different parts of this State.  Whether her actions were, in fact, much more than that will never be determined because she will never be required to account to the Board for her "negligence" regarding the serious, disturbing, and potentially dangerous events occurring at these hospitals.  The Board's inaction in this matter has far-reaching implications for the 30,000 nursing professionals subject to the Board's authority and for the patients they serve.  It is the responsibility of the Board to act diligently and promptly in reviewing, investigating, and conducting disciplinary hearings on complaints brought before it not only to guarantee that nurses will be held accountable for proven misconduct, but most importantly, to ensure the safety of patients and the public.  Such expeditious action by the Board also assures hardworking, diligent, and caring nurses that they are working alongside other nurses who are competent and fit to hold a nursing license in this State.  This results in protecting the public while also preserving the integrity of the nursing profession.

In many ways, nurses are the backbone of our entire healthcare system.  They advocate for health promotion, dispense medications, educate patients and the public on the prevention of illness and injury.  They also make doctors aware of any changes in a patient's status that may require attention

and often provide emotional and physical support to patients. The quality of nursing care can sometimes make the difference between life and death. It is inexcusable that the Board allowed this matter to go unresolved for five years. For the health, safety, and welfare of patients under nurses' care, it is my hope that the Board will take a serious look at its inaction in the handling of this matter to make certain this does not occur in the future.

For the foregoing reasons, I concur with the majority's opinion.